BOBBY JACK STALLCUP, Plaintiff-Appellee, v.
RHEA TAYLOR and Wife, JENNIE P. TAYLOR,
Defendants-Appellants.—463 S.W.2d 416.

Middle Section.  August 28, 1970.

Certiorari Denied by Supreme Court February 16, 1971.

408

J. B. Avery, Jr., Alamo, for plaintiff-appellee.

Adams, Adams, & Albright, Humboldt, Lyle Reid, Brownsville, Theo J. Emison, Alamo, for defendants-appellants.

TODD, J. This is a suit for wrongful death and property damages in a motor vehicle collision. The plaintiff, Bobby Jack Stallcup, husband of the deceased, received a jury verdict and judgment of $70,000.00 against the defendants, Rhea Taylor and wife, Jennie P. Taylor, who have appealed in error.

The collision occurred at the intersection of State Highways 20 and 88, where traffic on Highway 88 is required to stop and yield the right of way to traffic on Highway 20. The deceased, Mrs. Stallcup, was driving east on Highway 20 and the defendant, Mrs. Taylor, was driving north on Highway 88. Mrs. Taylor entered the intersection without stopping or yielding the right of way. The front of the Taylor car was in collision with the right side of the Stallcup vehicle which veered into the path of a westbound vehicle, resulting in a second collision.

■ ■ The first assignment of error is as follows:

"It was error for the trial Court, during plaintiff's proof-in-chief, after plaintiff introduced and read to the jury a portion of the discovery deposition of defendant Jennie P. Taylor, to refuse to permit defendant to introduce and read to the jury from said deposition questions and answers 33-87, inclusive; 93-111, inclusive; and 135-136. (BE 94, 95)."

After the testimony of all the witnesses presented by plaintiff in chief, the bill of exceptions records the following:

"MR. AVERY: Gentlemen of the jury, this is a sworn deposition of Mrs. Jennie P. Taylor taken on January 31, 1969. (Reads from deposition Questions and answers 1 through 11, Questions and answers 19 through 29, Questions and Answers 60 through 82, Questions and Answers 88 through 92, Questions and Answers 115 through 124, Questions and Answers 130 through 134, Questions and Answers 154 through 158

MR. ADAMS: If the Court please, if I might refer to the statute, I believe we are entitled to have all the deposition read.

THE COURT: It is all admissible or any part of it for any reason. I'll allow you to put any portion in when your time comes.

MR. ADAMS: Yes, sir, but I mean this is being offered as part of his proof and he hasn't read all that is pertinent.

THE COURT: I'll sustain the objection to it as of now. You can put other portions of it in at the time your proof is put on.

MR. ADAMS: If the Court please, I need to offer them for the record—

THE COURT: You can offer the whole thing.

PLAINTIFF RESTS.

MR. ADAMS: If the Court please, now in order to supply the record, under the provision of the Code, Chapter 12, Title 24 of the Code, which is the deposition law of 1959, we offer to have read following the reading of Mr. Avery from the discovery deposition of Mrs. Taylor these portions:

THE COURT: Mr. Adams, I'll let you read them now as a portion of your own proof.

MR. ADAMS: Yes, sir, I understand. I am making the record because we contend it should have been a part of his proof. Otherwise, I am going to put Mrs. Taylor on the stand.

THE COURT: All right.

MR. ADAMS: But just for the record, Your Honor, Question and Answer 83 through 87 inclusive, Questions and Answers 93 through 111 inclusive, Questions and Answers 135 and 136. Then, if the Court please, we have a motion.

THE COURT: So the record will be entirely clear, the Court will allow you to put this in in any manner you see fit as a part of your own proof and your motion was to make it a part of Mr. Avery's proof by reading those portions immediately following his."

Thereafter, the defendant moved for a directed verdict as to punitive damages, ruling was reserved upon the

motion, and same was subsequently allowed. No general motion for a directed verdict was made at the conclusion of plaintiff's evidence in chief.

Immediately thereafter, defendant, Mrs. Jennie Taylor, testified orally as first witness for the defendant, and no further offer was made to read any part of her deposition.

Pertinent parts of sec. 24-1208, T.C.A., are as follows:

"*24-1208. Use of deposition as evidence.*—At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one (1) of the following provisions:

\*      \*      \*      \*      \*      \*

(b) The deposition of a party or of any one who at the time of taking the deposition was an officer, director, or managing agent of a public or private corporation, partnership, or association which is a party may be used by an adverse party for any purpose.

\*      \*      \*      \*      \*      \*

(d) *If only part* of a deposition *is offered* in evidence *by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced,* and any party may introduce any other parts.

(e) A party shall not be deemed to make a person his own witness for any purpose by taking his deposition. The introduction in evidence of the deposition

or any part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party introducing the deposition, *but this shall not apply to the use by an adverse party* of a deposition as described in subsection (b) of this section. At the trial or hearing, any party may rebut any relevant evidence contained in a deposition whether introduced by him or by any other party." (Emphasis supplied)

Under the foregoing statute, the defendant had a right to demand, and it was the duty of the Trial Judge to require, that plaintiff also read to the jury all parts of the deposition which were relevant to the part which was introduced. Such additional relevant parts should have been read continuously and contemporaneously with that which was read so that all of the testimony of the deponent on the same subject might be heard and considered by the jury as a single unit, rather than in disconnected fragments. Isolated statements of a party or witness, whether by deposition or otherwise, must be considered in the context of other statements made by the witness at the same time on the same subject.

Of course, there can be no reversal for harmless error. Sections 27-116, 27-117, T.C.A.

Neither the brief of defendants nor the record as a whole discloses wherein the defendant was prejudiced by the refusal of the Trial Judge to strictly apply the foregoing statute. The parts of the discovery deposition read by plaintiff related to the circumstances of the collision. The parts mentioned in defendant's motion also related to the circumstances of the collision, but most of this testimony was repeated in her oral testimony (as indeed

all could have been so repeated); and defendant did not exercise the privilege of reading from the deposition.

Circumstances could exist wherein the subject ruling of the Trial Court would be reversible error, however such circumstances do not exist in the present case. No rights were lost. No evidence was rendered unavailable to either party. No question existed as to plaintiff making defendant "his witness."

The first assignment of error is respectfully overruled.

Assignment No. 2 complains of the statement of the Trial Judge that:

"The Court has also ruled out the question of any contributory negligence on the part of deceased."

Assignments numbered 3 and 8 deal with the plea and special request on the subject of "Last Clear Chance."

Assignments numbered 4 and 6 deal with the plea and special request on the subject of "Contributory Negligence."

Assignments numbered 9-14, inclusive, complain of special requests dealing with the duty of a motorist on a main highway approaching the intersection of a secondary highway.

Assignment No. 5 relates to the plea of failure to fasten seat belt.

Assignment No. 7 complains of the failure to charge on the subject of remote contributory negligence.

These assignments raise the issue of whether there is any evidence to justify a finding of contributory negli-

gence, either proximate or remote, on the part of deceased.

Defendant insists that:

"* * * To conclude that there was some material evidence upon which the jury could consider contributory negligence and the other matters omitted from the charge one need only observe quickly the time-distance situation, based upon what the jury *could* have found. According to plaintiff's principal eye witness, Trooper Slayton, at the moment it became obvious to him that the Taylor car would not stop the Stallcup car was 3 to 7 seconds away traveling 45 to 55 mph. We shall take for illustration the shortest time in his estimate, 3 seconds, and the slowest speed, 45 mph, which converts to 66 feet per second. For 3 seconds to elapse the Stallcup car would have been 198 feet away when its driver should have observed that the Taylor car would not stop. Using the faster speed, 55 mph or 81 feet per second, and the longer time, 7 seconds, the distance would have been 567 feet. There is no disputing the fact of visibility in all directions of at least one quarter mile. (See Proposition of Fact VI, supra). The Court judicially knows reaction time should not exceed one second."

Contrary to defendants' contention, Troper Slayton did not testify as to any reliable measure of time. After repeatedly refusing to make any estimate of time, the witness Slayton testified as follows:

"Q49. You have no idea then except to say a few seconds?

A. Yes, sir.

Q50. Can you explain to the jury when you say a few seconds what you consider to be a few seconds in number?

A.   3-4-5-6-7.''

Such testimony is not of such material and substantial quality, as to furnish the sole basis of a verdict in so grave a matter as the present case.

The other testimony of the same witness illustrates the unreliability of the "3-4-5-6-7" testimony. He testified that he was parked 40 to 60 feet from the intersection, that the Taylor car passed him going 20 to 35 miles per hour, that the Stallcup car was observed at the same time 30 to 70 feet from the center of the intersection moving at 45 to 55 miles per hour. Slayton said he realized the Taylor car was not going to stop because the brake signal did not light. Of course Slayton had a view of the rear of the Taylor car, but the deceased could have seen only the left side and front of the Taylor car as it approached the intersection.

The mathematical calculations in defendants' foregoing insistence are not valid grounds for a finding by the jury. Whatever the speed and distances, if the trooper simultaneously saw both cars approaching the intersection, then the elapsed time from his observation to the instant of collision would be the same for both cars. Thus, if three seconds elapsed from the time he saw the Taylor car pass until the time of collision, then three seconds elapsed from the time he saw the Stallcup car until the time of collision. Each driver had the same quantum of time in which to act, but the Stallcup car was travelling much faster and therefore had far less

opportunity to stop. According to the mathematical factor used by defendants (66 feet per second at 45 miles per hour) if, as testified by the trooper, the deceased was 70 feet from the center of the intersection going 45 miles per hour, slightly more than one second would be required to reach the point of collision. If the Stallcup car was closer to the intersection or travelling faster, then the time elapsed would be less than a second.

In short, defendant seeks to begin with an assumed time lapse "3-4-5-6-7" and to reconstruct therefrom an assumed distance which is contrary to the distance observed and stated by the witness. An observation of distance is generally more accurate than an estimate of time.

■ Contrary to defendants' insistence, the Court does not judicially know that reaction time should not exceed one second. It is, of course, a matter of universal knowledge that there is a natural and unavoidable delay in reaction or response to an observed crisis or emergency, but the length of such delay varies with the individual and the circumstances and cannot be said to be a matter of judicial knowledge.

■ It is true, as insisted by defendants, that a motorist upon a favored highway is not relieved of the duty to exercise ordinary care, even as to other motorists who unlawfully enter the main highway from a secondary road. However, this duty is greatly limited by the principle that everyone has the right to assume that all others will obey the law and act with ordinary care until it is obvious that such is not the case. Thus a motorist on a main highway has no duty to anticipate that a vehicle on a secondary road will fail to stop and yield the right of way until it is obvious that such will not take

place. Such a situation was shown in Prater v. Louisville and Nashville Railroad Company, 59 Tenn.App.82, 438 S.W.2d 68 (1968) wherein a truck approaching a railroad crossing was unable to stop and engaged in unusual movements in an effort to avoid collision—all in plain view of the engineer.

In the present case, there is no evidence that the defendant, Mrs. Taylor, was approaching the intersection in any manner which would suggest that she did not plan to stop and yield the right of way. All of the evidence is to the effect that she was travelling at a moderate speed and slowed down as she approached the intersection. Even if the deceased were under a duty to abandon her principal look-out on the main road and constantly scrutinize the movement of the Taylor vehicle on the side road (which was, of course, not her duty), nevertheless the deceased could not have possibly observed anything to suggest danger until the Taylor vehicle was in very close proximity to the highway—so close in time and distance as to preclude any reasonable possibility of evasive action by the Stallcup vehicle. There was no opportunity to stop, and veering to the opposite side of the road was precluded by the approach of the Berryman car which did in fact collide with the Stallcup car after the Taylor-Stallcup collision.

In Perry v. Carter, 188 Tenn. 409, 219 S.W.2d 905, (1948), the Supreme Court reversed the circuit court and this Court and awarded judgment to the driver on the principal highway and against the driver on the side street who failed to yield the right of way. This was done in spite of the fact that plaintiff was "traveling awfully fast" within a municipality. The Supreme Court said:

"(4) It is generally conceded that the driver on the main or arterial highway has the right of way and that the driver on the crossing road has a primary duty of caution before entering this main road. Claybrooks v. State, 164 Tenn. 440, 51 S.W.(2d) 499. See also Annotations 58 A.L.R. 1199; 81 A.L.R. 185." 188 Tenn., p. 414, 219 S.W.2d p. 907.

The disposition of each case must necessarily depend upon the peculiar facts and circumstances of the case. In the present case, the undisputed facts were such that reasonable men would all agree that the deceased was not guilty of negligence in the operation of the Stallcup vehicle on the occasion in question. Nor is there any evidence of remote negligence on the part of deceased with the possible exception of failure to fasten her seat belt. In this connection, the Tennessee Seat Belt Statute, sec. 59-930, T.C.A., reads as follows:

*"59-930. Safety belts—Specifications—Failure to wear—Effect—Penalty.*—It shall be unlawful for any person to buy, sell, lease, trade or transfer from or to Tennessee residents, at retail, an automobile which is manufactured or assembled commencing with the 1964 models, unless such automobile is equipped with safety belts installed for use in the left front and right front seats thereof. All such safety belts shall be of such type and be installed in a manner approved by the department of safety of the state of Tennessee. The department shall establish specifications and requirements of approved types of safety belts and attachments. The department will accept, as approved, all seat belt installations and the belt and anchor meeting the specifications of the Society of Automotive Engineers. Provided that *in no event shall failure to*

*wear seat belts be considered as contributory negligence, nor shall such failure to wear said seat belt be considered in mitigation of damages on the trial of any civil action.*

"Violation of any provision of this section is hereby declared a misdemeanor and anyone convicted of any such violation shall be fined not less than twenty-five dollars ($25.00) nor more than fifty dollars ($50.00) for each violation. [Acts 1963, ch. 102, secs. 1, 2.]" (Emphasis supplied)

The emphasized portion of the preceding statute concludes the question of instructing the jury on the subject.

In line with the foregoing discussion, all assignments of error relating to "last clear chance," "duty at intersections," seat belts, proximate and remote contributory negligence are respectfully overruled.

■ The fifteenth assignment of error complains of the refusal of the Trial Judge to charge the jury that the recovery would not be subject to Federal Income Tax.

In the case of Dixie Feed and Seed Co. v. Byrd, 52 Tenn.App. 619, 376 S.W.2d 745 (1963), this Court considered and rejected an identical insistence. Recognizing the minority view, this Court unequivocally adopted the majority view that it is not proper to instruct the jury as to taxability of recovery.

The fifteenth assignment of error is respectfully overruled.

■ The sixteenth and last assignment of error complains of the alleged excessiveness of the verdict.

The evidence shows that the deceased was a 29-year old mother of two children in excellent health; that she was a high school graduate with more than two years college training; that she had been employed at two banks and as an assistant school teacher; that she was active in community affairs; that, if she desired to re-enter public employment, a bank would employ her at $6,000 per year, and that her statistical life expectancy was 47.46 years.

Assuming a 30-year employable life from age 29 to age 59, the earnings of deceased during this period would reasonably be $180,000.00. The present cash value of such future earnings would be considerably less, but would substantially support the verdict of $70,000.00 In addition, there is evidence of funeral expenses of $2,260.25 and property damage between $1,400.00 and $1,595.00.

In Memphis Street Railway Company v. Cooper, 203 Tenn. 425, 313 S.W.2d 444 (1957), the Supreme Court said:

"(5) Thus it is seen by our authorities, which are absolutely uniform in this State up to the present time, that the recovery for the death of Cooper is not based on whether he left a widow and children or whatnot, but is based upon the pecuniary value of the life of the man himself. Which is to be,

'* * * determined upon a consideration of his expectancy of life, his age, condition of health and strength, capacity for labor, and for earning money through skill in any art, trade, profession, occupation or business, and his personal habits as to so-

briety and industry.' Davidson Benedict Co. v. Severson, 109 Tenn. 572, 72 S.W. 967.''

203 Tenn., pp. 432, 433, 313 S.W.2d p. 448.

To the same effect is Southern Railway Company v. Sloan, 56 Tenn.App. 380, 407 S.W.2d 205 (1965) wherein this Court approved a verdict of $103,923.00 for the death of a 41 year old school teacher whose annual earnings were $4,507.00 and life expectancy 36.4 years. In that case, this Court said:

''[9] Bearing in mind the oft-stated truism that the amount of the verdict in a tort action is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence, we can not say that the amount awarded as damages for the wrongful death of Ruth Galyon Sloan was excessive. Cf. Southeastern Aviation, Inc., v. Hurd, 209 Tenn. 639, 355 S.W.2d 436.'' 56 Tenn. App., p. 391, 407 S.W.2d p. 211.

Upon consideration of all of the elements listed in Memphis Street Railway Company v. Cooper, supra, and many other authorities, the verdict rendered in this cause is not excessive, nor does it evince passion, prejudice or unaccountable caprice as urged in the assignment of error. There is therefore no ground for reducing by remittitur as urged in argument.

The sixteenth and last assignment of error is respectfully overruled.

Each assignment of error has been considered and overruled. The entire record has been reviewed with the

resulting conclusion that no reversible error was committed during the trial and that the result was just under the facts and circumstances shown by the evidence.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the defendants-appellants.

Affirmed.

Shriver, P.J. (M.S.), and Puryear, J., concur.