Alexander MacDONALD, et al.

v.

GENERAL MOTORS CORPORATION.

Nos. 3:88–0993, 3:89–0045, 3:89–0458 and 3:89–0562.

United States District Court, M.D. Tennessee, Nashville Division.

Feb. 13, 1992.

---

**29.** Having resolved this issue, Pelikan's motion for oral argument, *see* footnote 12, *supra,* is denied.

Chicago, Ill., Leonard D. Fisher, Heath & Fisher, Topeka, Kan., for Ofray N. Hall.

## MEMORANDUM

WISEMAN, District Judge.

This products liability case arises out of a 1987 car crash. The dispute turns on an interpretation of Tennessee's Mandatory Safety Belt Act, Tenn.Code Ann. §§ 55-9-601 to 610. The matter is before the Court on the Plaintiffs' Motion to Strike Affirmative Defenses of the Defendant General Motors Corporation. For the following reasons, the Plaintiffs' Motion hereby is GRANTED IN PART and DENIED IN PART.

### I.

On October 29, 1987, David MacDonald, Peter Cannistra, Susan Stanfield and Ofray Hall were injured when the twelve-passenger 1985 General Motors Corporation ("General Motors") van in which they were riding rolled over on Interstate 24 in Montgomery County, Tennessee.[1] The van's driver, Philip Voight, swerved to evade a deer on the road and lost control of the vehicle when he applied the brakes. The van skidded, went off the road and rolled over three times. David MacDonald was ejected from the van and killed. Cannistra sustained a spinal cord injury rendering him paraplegic. Hall also was ejected from the van and suffered a closed head injury, several fractures, and a bilateral pneumothorax. Stanfield suffered a back injury and a severe scalp wound.

General Motors states that the van was equipped with both lap belt and shoulder harness equipment, and that this passenger restraint equipment fully complied with the applicable Federal Motor Vehicle Safety Standards. Plaintiffs point out that although shoulder harnesses were provided for the front seat passengers, "[t]here were no shoulder harnesses for the rear seats." Affidavit of John Stiles attached to Plaintiffs' Reply to Defendant's Re-

Daniel Lynch Nolan, Jr., Daniel, Harvill, Batson & Nolan, Clarksville, Tenn., for Alexander, Joan and David MacDonald.

Andy Dwane Bennett, Office of the Atty. Gen., Nashville, Tenn., for State of Tenn.

Noel F. Stahl, Joseph R. Wheeler, Cornelius & Collins, Nashville, Tenn., Thomas J. Burke, Jr., Michael Davis, Chicago, Ill., for General Motors Corp.

Daniel Lynch Nolan, Jr., Daniel, Harvill, Batson & Nolan, Clarksville, Tenn., for Peter Cannistra.

Daniel Lynch Nolan, Jr., Daniel, Harvill, Batson & Nolan, Paul Dennis Welker, Clarksville, Tenn., S. Jerome Levy, Craig Simon, Levy, Leopold & Associates, Chicago, Ill., Peggy Smyrnes Williams, Pittsburgh, Pa., for Susan Stanfield.

Daniel Lynch Nolan, Jr., Daniel, Harvill, Batson & Nolan, Clarksville, Tenn., S. Jerome Levy, Levy, Leopold & Associates,

---

1. Five other passengers who are not parties to this lawsuit were in the van at the time of the accident.

sponse and Objection to Plaintiffs' Motion to Strike Affirmative Defenses ("Plaintiffs' Reply"). Plaintiffs were riding in the rear seats of the van. Of the four plaintiffs, MacDonald, Cannistra, and Hall were not wearing safety belts at the time of the accident. Cannistra Depo. at 83, 108; Hall Depo. at 107.

Alexander MacDonald (the administrator of David MacDonald's estate), Cannistra, Stanfield and Hall sued General Motors in Tennessee state court. After removal to federal court, all four cases were consolidated by order of this Court on July 31, 1989.

Plaintiffs contend that the accident was caused by the defective and unreasonably dangerous condition of the van. Plaintiffs allege that only one of four tires provided effective braking. "The right rear axle seal was defective in its design, manufacture, assembly and installation, in that it was liable to and likely to allow fluid to enter the right rear axle brake system so as to cause the brakes of the van to be impaired and to function improperly." MacDonald Complaint at ¶ 6.

General Motors filed a Motion to Amend Its Answer to include additional defenses. The Court granted that motion on January 12, 1990. Among other defenses, the car manufacturer asserts that the Plaintiffs' failure to wear the provided safety belts is relevant to the defenses of contributory negligence, assumption of the risk, and failure to mitigate damages. It also alleges that the evidence is relevant to the determination of proximate causation of the specific injuries sustained. In essence, General Motors argues that the jury should be allowed to consider evidence that the use of seat belts would have prevented or lessened the Plaintiffs' injuries and, as a result, that the Plaintiffs' recovery, if any, should be decreased accordingly. This legal theory is more commonly known as the "seat belt defense."

Subsequently, the Plaintiffs filed a Motion to Strike the Defendant's Affirmative Defenses pursuant to Fed.R.Civ.P. 12(f). Plaintiffs contend that Tenn.Code Ann. (T.C.A.) § 55-9-604 absolutely prohibits evidence of failure to use safety belts in any civil action. Section 604 provides:

> In no event shall failure to wear a safety belt be considered as contributory negligence, nor shall such failure to wear a safety belt be admissible as evidence in a trial of any civil action.

General Motors has responded to that motion and the Attorney General of Tennessee intervened in this action and has filed a memorandum defending the constitutionality of § 604.

This case presents five issues: (1) whether T.C.A. §§ 55-9-603 through 610, including § 604, are null and void pursuant to the express provisions of T.C.A. § 55-9-609(b); (2) whether § 604 applies to the vehicle in question; (3) whether § 604 is preempted by the National Motor Vehicle Safety Act, 15 U.S.C. §§ 1381 et seq.; (4) whether the court should apply the Federal Rules of Evidence or § 604 on the question of admissibility of seat belt use; and (5) if § 604 is applicable, what is its scope. The Court will examine these questions in turn below.

## II.

This product liability diversity action is governed by the substantive law of Tennessee. A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state, including that state's choice of law rule. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Under Tennessee tort law, choice of law is governed by the doctrine of *lex loci delictus*, "the place of the harm." *Winters v. Maxey*, 481 S.W.2d 755, 756–759 (Tenn.1972). *Accord Myers v. Hayes Int'l Corp.*, 701 F.Supp. 618, 620 (M.D.Tenn.1988) (Wiseman, C.J.). The doctrine applies in strict liability cases as well as negligence suits. *Myers*, 701 F.Supp. at 620–622; *Babcock v. Maple Leaf, Inc.*, 424 F.Supp. 428, 432 (E.D.Tenn. 1976). Although the alleged tort in this case, *i.e.* the defective manufacture of the van's right rear axle seal, occurred elsewhere, the harm to the Plaintiffs occurred in Tennessee. Therefore, the Plaintiffs' substantive rights are delineated by the law of Tennessee. *Bailey v. Chattem*,

*Inc.*, 684 F.2d 386, 392 (6th Cir.1982) (quoting *Koehler v. Cummings*, 380 F.Supp. 1294, 1305 (M.D.Tenn.1974)); *Myers*, 701 F.Supp. at 620.

### III.

Before embarking on a comprehensive analysis of § 604, it is appropriate and helpful to examine its statutory evolution. The original version of § 604 is now more than twenty-eight years old. Enacted in March 1963 as T.C.A. § 59–930, it provided in pertinent part as follows:[2]

[I]n no event shall failure to wear seat belts be considered as contributory negligence, nor shall such failure to wear said seat belts be considered in mitigation of damages on the trial of any civil action.

While the 1963 act also required that seat belts must be installed in automobiles, the statute did not require either drivers or passengers to wear them.

In 1977, former section 930 was renamed T.C.A. § 55–9–214. Section 214 was a verbatim recodification of the portion of former § 930 that dealt with the relevance of failure to wear safety belts.

The current version of Tennessee's bar against use of the seat belt defense was enacted in 1986 as part of the Tennessee Mandatory Safety Belt Act (the "Act"), T.C.A. §§ 55–9–601—610. Section 604 deleted any reference to mitigatory damages and instead incorporated a broad prohibition against admitting into evidence the use of failure to wear a seat belt in any civil action.

The legislative intent behind the statutory revision of § 604 is sparse. Perhaps the most noteworthy moment in the shaping of § 604 came when the Tennessee legislature, after a back and forth battle, eventually rejected an attempt by the House of Representatives to weaken the language of the original version of the statute, then codified as § 214.

The House of Representatives initially passed an amendment that would have entirely shifted the focus of former § 214. Section 3(d) of House Bill 533 introduced on February 11, 1985, provided:

Failure to comply with subsections (b) or (c) of this section shall be admissible to mitigate damages with respect to any person who is involved in a motor vehicle accident while violating the requirements of these subsections and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident.

The House passed a bill in 1985 containing that language.

The origin of the proposed statutory language in House Bill 533 is significant for the purposes of this case. The language was adopted nearly verbatim from the federal regulation specifying minimum criteria for state mandatory safety belt usage laws. 49 C.F.R. § 571.208, S4.1.5.2(c). One of the three minimum criteria called for by that federal regulation is:

a provision specifying that the violation of the belt usage requirement may be used to mitigate damages with respect to any person who is involved in a passenger car accident while violating the belt usage requirement and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident.

49 C.F.R. § 571.208, S4.1.5.2(c)(2). The federal requirement would be satisfied if a state rule of law permits such mitigation.

But Senate Bill 790, introduced by Sen. William Richardson, deleted the revisionist language used in House Bill 533 and substituted in its place the exact language which now comprises § 604. The amendment adding such language was offered and accepted without discussion by the Senate on April 25, 1985. Eventually, the legislature passed and the Governor signed the Senate's version of the amendment along with the rest of the mandatory seat belt act.

In this case, however, the two competing amendments obviously had antithetical purposes. The proposed language in the House bill would have resulted in a com-

---

**2.** Former T.C.A. § 59–930 also contained provisions requiring that automobiles be equipped with safety belts. *Cf.* T.C.A. § 55–9–601 (1986).

plete turnaround in Tennessee's approach to admissibility of seat belt evidence, which had been unchanged since 1963. By contrast, the version of the statute eventually adopted, § 604, not only maintained the same approach to such evidence, but also significantly broadened the scope of former § 214 as will be discussed *infra*.

### IV.

The Court will first address the narrow statutory interpretation issue about whether T.C.A. § 55–9–609(b) makes § 604 null and void.

When originally passed in 1986, Tennessee's Mandatory Safety Belt Act included several cutoff dates that subsequently were repealed. Section 609(b) of the Act provided that §§ 603–610 were to become null and void if the United States Secretary of Transportation "does not include Tennessee within the population necessary to prevent [implementation of federal air bag requirements]."

Pursuant to 49 C.F.R. § 571.208, S4.1.5.1 (1987), federal automatic restraint requirements would not go into effect if the Secretary of Transportation determined, by April 1, 1989, that two-thirds of the national population were subject to state mandatory safety belt laws meeting the regulatory criteria.[3] The Secretary of Transportation never made such a determination. Memorandum in Support of Response and Objection to Plaintiffs' Motion to Strike Affirmative Defenses ("Defendant's Memorandum"), Exhibit 1 (letter of Paul Jackson Rice, Chief Counsel to the National Highway Traffic Safety Administration of the U.S. Dept. of Transportation). Nor was the Secretary required to do so. "Under S4.1.5, the Secretary is not required to make any determination about any State safety belt laws." Defendant's Memorandum, Exhibit 1.

Section 608(a) of the Act provided a deadline of July 1, 1989 for the "review and evaluation of the implementation, impact, and efficacy of §§ 55–9–603—55–9–610." The findings of this review were to be presented to the Senate and House Government Operations Committee, which in turn was required under § 608(b) to "make recommendations to the general assembly as to whether the provisions of §§ 55–9–603—55–9–610 should be repealed on June 30, 1990, as provided by § 55–9–610."

On March 22, 1989, the Tennessee legislature amended T.C.A. § 55–9–610, rewriting the section to provide as follows: "The provisions of §§ 55–9–608 and 55–9–609 shall cease to be effective and are hereby repealed effective July 1, 1989." Acts 1989, ch. 27, § 1. At that time, the Tennessee legislature did not amend any other section of the 1986 statute.

■■■ General Motors mounts a two-pronged argument that § 604 has been rendered null and void through the force of § 609(b). First, it argues that because the Department of Transportation made no determination regarding the population specified in § 609(b) as of April 1, 1989, Tennessee was not included in the specified population, and therefore §§ 603–610 automatically became null and void on that date. Second, assuming arguendo that its first proposition is true, the Defendant contends that the March 22, 1989 repeal of §§ 608 and 609 was void and unconstitutional, because the statute it purported to amend already had been repealed.

General Motors' statutory construction argument is fatally flawed. Because the Secretary of Transportation never calculated the percentage of the population subject to state mandatory safety belt laws that comply with the federal standards, Tennessee neither was included nor excluded. The Secretary of Transportation's failure to make such a determination moots—rath-

---

**3.** 49 C.F.R. § 571.208, S4.1.5.1 (1987) provides: If the Secretary of Transportation determines, by not later than April 1, 1989, that state mandatory safety belt usage laws have been enacted that meet the criteria specified in S4.1.5.2 and that are applicable to not less than two-thirds of the total population of the 50 states and the District of Columbia (based on the most recent Estimates of the Resident Population of States, by Age, Current Population Reports, Series P–25, Bureau of the Census), each passenger car manufactured under S4.1.3 determination shall comply with the requirements of S4.1.2.1, S4.1.2.2, or S4.1.2.3.

er than triggers—§ 609(b)'s nullification provision. Also, the Defendant's construction of § 609(b) rests on the unsupported theory that the Act incorporated the April 1, 1989 deadline specified in the federal motor vehicle restraint regulations at 49 C.F.R. § 571.208, § 4.1.5. The Act, however, makes no reference to such a specific date.

Additionally, the interpretive canon *expressio unis est exclusio alterius* applies in this case. When it amended the Act in 1989, the Tennessee legislature had the opportunity to, but did not, alter any other sections of the safety belt legislation, including § 604. Its actions resulted in extending the Act for an unspecified period of time beyond July 1, 1989 and indicated the legislature's intent to continue enforcement of the statute.

In sum, the Court finds that T.C.A. § 55–9–604 has not been rendered null and void by virtue of the provisions of § 609(b) of the Act. The Court need not address the Defendant's second argument since § 609(b) never was triggered, as General Motors alleges, and the Act was valid on April 1, 1989 as well as on June 30, 1989.

## V.

General Motors next argues that § 604 is irrelevant because the van in question is not covered by the Act. Defendant argues that the Act does not apply to the van since it is heavier than the upper weight limit specified in the statute.

Sections 55–9–601, –602, and –603 all define "passenger car" or "passenger motor vehicle" as:

> any motor vehicle with a manufacturer's gross vehicle weight rating of eight thousand five hundred pounds (8,500 lbs.) or less that is not used as a public or livery conveyance for passengers. Provided, however, that "passenger car" or "passenger motor vehicle" shall not apply to motor vehicles which are not required by federal law to be equipped with safety belts.

The General Motors van in question weighs 8,600 pounds.

The Defendant again misinterprets the Act. A court construing a statute must give the statute's words their ordinary, commonly accepted meaning. *Computer Shoppe, Inc. v. State,* 780 S.W.2d 729, 735 (Tenn.App.1989). Each of the three sections relied on by the defendant containing the definition of "passenger car" or "passenger motor vehicle" also explicitly limits the applicability of that definition to that particular section. The pertinent definition is not included in § 604, nor is the term "passenger car" or "passenger motor vehicle" used in that section.

Sections 601, 602, and 603 mandate specific statutory duties for car seat belt specifications, child passenger restraints and use of safety belts in passenger vehicles. By contrast, § 604 precludes legal evidence in civil actions whether or not §§ 601–603 apply. It is not directed at minimum seat belt safety standards or required use. Indeed, the language used by the Tennessee Legislature to frame § 604 is unequivocally broad—"[i]n no event shall failure to wear a safety belt be considered as contributory negligence...." (emphasis added).

Thus, under Tennessee law, the admissibility or inadmissibility of failure to wear safety belts is not predicated on the weight class of the vehicle. The Defendant's argument is rejected.

## VI.

Third, General Motors argues that the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), 15 U.S.C.A. § 1381 *et seq.*, preempts § 604. Federal law may preempt state law in three different ways. First, Congress may specifically define the extent to which it intends to preempt state law. Second, Congress may indicate an intent to occupy an entire field of regulation, in which case the states must leave all regulatory activity in that arena to the federal government. Third, a federal regulation may, notwithstanding the absence of either of the first two preemption methods, still preempt all state laws with which it is in actual conflict. Such a conflict exists when it is impossible to comply with both state and

federal law, or "when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Michigan Canners and Freezers Assn. v. Agricultural Marketing and Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984).

In passing the National Traffic and Motor Vehicle Safety Act, Congress specifically defined the extent to which it intended to preempt state law. The Safety Act provides for the supremacy of federal motor vehicle safety standards over state standards. It states in pertinent part:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard....

15 U.S.C.A. § 1392(d).

The federal regulation specifying minimum criteria for state mandatory safety belt usage laws declares that state mandatory safety belt usage laws must provide for the following enforcement measures:

> (1) A penalty of not less than $25.00 (which may include court costs) for each occupant of a car who violates the belt usage requirement.
>
> (2) A provision specifying that the violation of the belt usage requirement may be used to mitigate damages with respect to any person who is involved in a passenger car accident while violating the belt usage requirement and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident. This requirement is satisfied if there is a rule of law in the State permitting such mitigation.
>
> (3) A program to encourage compliance with the belt usage requirement.

49 C.F.R. § 571.208, S4.1.5.2(c).

The federal regulation imposes the obligation to wear safety belts only with respect to "front seat occupants." 49 C.F.R. § 571.208, S4.1.5.2(a). Likewise, Tennessee law does not require rear seat passengers to wear safety belts. T.C.A. § 603(b)(1) provides: "The provisions of this section shall apply only to the operator and all passengers occupying the front seat of a passenger motor vehicle."

General Motors argues that preemption applies pursuant to § 1392(d) since the federal regulations provide that seat belt evidence on the question of mitigation of damages should be admissible and § 604 seemingly bars such evidence. Although the Defendant's argument is weighty, the Court feels compelled to find that § 604 is not preempted in this particular instance.

Simply put, the facts of this case do not present the question of whether § 604 is preempted by § 1392(d) of the Safety Act because neither the federal law nor applicable state law require rear seat passengers to wear safety belts. The federal motor vehicle safety regulation mandates that state laws allow the failure to wear safety belts to be used to "mitigate damages," but only when the failure to wear a safety belt constitutes a "violation of the belt usage requirement." 49 C.F.R. § 571.208, S4.1.5.2(c)(2). Rear seat passengers can elect not to wear safety belts without violating Tennessee's belt usage requirement. Under the applicable federal regulation, a state mandatory safety belt law need not impose a duty to wear safety belts in the rear seat. Consequently, § 604 is not preempted as to rear passengers because there is no federal or state statutory provision for reducing a rear seat plaintiff's recovery based on his or her failure to wear safety belts.

## VII.

Sections 401–403 of the Federal Rules of Evidence govern admissibility of evidence to the extent that it is relevant and that it is not prejudicial. Even if evidence is relevant, it may be excluded in the exercise of the Court's discretion, if its probative force is outweighed by the "danger of unfair prejudice, confusion of the issues, or [risk

of] misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Civ.P. 403. Of course, no provision of the Rules explicitly precludes evidence of nonuse of seat belts.

The Defendant asserts a number of defenses hinging on the presentation of evidence about three of the plaintiffs' failure to wear the provided safety belts. General Motors argues that such a failure to wear safety belts constitutes either contributory negligence, assumption of the risk, or failure to mitigate damages, and that evidence of such failure is relevant to determining proximate causation of injuries sustained by the plaintiffs. It intends to produce evidence that the plaintiffs' injuries would have been diminished if not prevented had they been wearing safety belts at the time of the accident.

■■■ In response, the Plaintiffs contend that § 604 completely bars the use of the evidence about seat belt usage that General Motors plans to present to the jury. No Tennessee court, however, has addressed the issue whether § 604 precludes evidence of failure to wear safety belts regardless of its relevance to the cause of action. In fact, no Tennessee court has undertaken to determine the scope of § 604. An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstances. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953).

■■■ The evidentiary dispute raises a question about whether this court sitting in diversity should apply the Federal Rules of Evidence or Tennessee's seat belt statute. Procedural rules generally are not subject to *Erie* and federal law governs. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). It has been observed that:

> [e]vidence rules are not substantive for Erie purposes.... While recognizing that privileges can be an expression of state substantive law, many courts have refused to apply state rules that use the exclusionary sanction to support some policy that seems equally substantive.

At the same time, there are a number of cases that have applied state exclusionary rules without much attention to the reasons for such application.

22 C. Wright & K. Graham, *Federal Practice and Procedure,* § 5201 at 232 (1978) (footnotes omitted). As indicated, a federal court may adopt a state exclusionary rule where the rule embodies substantive state policy. *See, e.g., Ricciardi v. Children's Hosp. Medical Center*, 811 F.2d 18, 21 (1st Cir.1987); *In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 803 F.2d 304, 313–14 (7th Cir.1986); *Conway v. Chemical–Leaman Tank Lines, Inc.*, 540 F.2d 837, 839 (5th Cir.1976). *Accord* 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2405 at 327 (1971 and 1990 Supp.) (footnotes omitted).

■■■ Under the *Hanna* analysis, the distinction between substance and procedure is critical in order to determine whether application of the Federal Rules Evidence infringes on a substantive state policy that may be embodied in § 604. Despite this Court's view that the admissibility of evidence regarding seat belt usage is a procedural matter not affected by *Erie,* the Sixth Circuit appears to have perceived it as a matter of substantive law. In *Sours v. General Motors Corp.*, 717 F.2d 1511 (6th Cir.1983), General Motors argued that evidence of seat belt use was relevant to the injuries suffered by the plaintiff and should have been admitted at trial. In reaching its decision, the court found it necessary "to look first to the state's highest court and then to its intermediate appellate courts on matters of substantive law ... [for precedents] on the admissibility of seat belt evidence....", reasoning that any decision on admissibility of seat belt evidence involved a "delicate balance of policy interests." *Id.* at 1519–1520. Thus, in this instance the Court feels constrained to view the admissibility of this evidence through the Tennessee courts' interpretation of § 604. Unfortunately, no Tennessee cases construe § 604. When presented with a novel issue of law and applicable state precedent is absent, this Court must predict how the highest court of the state

would resolve the issue. *Id.* at 1520. *See also Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3rd Cir.1991); *Empire Distributors of N.C. v. Schieffelin & Co.*, 859 F.2d 1200, 1203 (4th Cir.1988).

Three prior decisions interpreting Tennessee's seat belt statute have commented on the predecessor to § 604, holding that it barred introduction of evidence about seat belt use for remote or proximate contributory negligence, negligence, mitigation of damages, and misuse of the product. *Cheatham v. Thurston Motor Lines*, 654 F.Supp. 216 (S.D.Ohio 1986), involved negligence claims governed by Tennessee law and products liability claims governed by Ohio law. Turning to the negligence claims, the court applied former T.C.A. § 55–9–214 (as noted *supra*, a verbatim recodification of the portion of former T.C.A. § 59–930) on a Motion in Limine and held that "there can be no question but that evidence of use or non-use of seat belts is *irrelevant* to Plaintiff's [negligence claims], and therefore must be excluded." 654 F.Supp. at 217 (emphasis added).

■ The court also addressed a seat belt evidentiary dispute in *Stallcup v. Taylor*, 62 Tenn.App. 407, 463 S.W.2d 416 (Tenn.App.1970), *cert. denied*, Feb. 16, 1971. Following a trial, the plaintiff won a judgment based exclusively on the defendant's negligence in colliding with the car driven by the plaintiff's decedent. The defendant appealed based on the trial court's failure to charge the jury on the subject of remote contributory negligence.[4] In *Stallcup*, the defendant's argument summarily was rejected. After citing former § 930, which explicitly forbade evidence about non-use of seat belts in reference to contributory negligence and mitigation of damages, the appellate court found that the statute "concludes the question of in-

structing the jury on the subject.... [of] seat belts, proximate and remote contributory negligence...." *Id.* 463 S.W.2d at 422.

■ Finally, and most important to the instant motion, the Tennessee Supreme Court in *Ellithorpe v. Ford Motor Company*, 503 S.W.2d 516, 521 (Tenn.1973) reaffirmed the exclusionary language of former § 930. *Ellithorpe* involved a car crash case in which the plaintiffs raised strict liability claims against the car manufacturer. In response, Ford contended that the plaintiff's conduct amounted to contributory negligence, abnormal use of the product, and assumption of the risk. In particular, Ford argued that, although the plaintiff wore her lap belt, her failure to wear the shoulder harness amounted to misuse of the product. The court adopted the "crashworthiness" doctrine,[5] holding that car collisions are foreseeable and that the manufacturer has a duty to minimize the harm of inevitable accidents by utilizing a reasonably safe design. The Court also cautioned that the defense of abnormal use should not apply because a car manufacturer can reasonably foresee the "failure of its consumers to wear their safety belts." 503 S.W.2d at 521.

■ Although the cases above do not interpret § 604, they leave no conclusion except that § 604 applies in this case and that its statutory language directs the court to preclude evidence about failure to wear a safety belt during the trial. This general language, however, does not conclude the Court's inquiry. For now the Court must examine the scope and constitutionality of the Act as applied. While § 604 excludes much evidence about failure to wear a seat belt, the statute is not as all-encompassing as the Plaintiffs suggest.

---

4. Remote contributory negligence is an "unusual" Tennessee tort doctrine defined as that negligence which is too far removed as to time or place, or causative force, to be a direct or proximate cause of the accident. *Arnold v. Hayslett*, 655 S.W.2d 941, 945 (Tenn.1983). If a plaintiff's conduct is found to constitute remote contributory negligence, any damages awarded will be reduced in proportion to the plaintiff's contribution to the injury. *Id.* Thus, while

proximate contributory negligence bars recovery completely, remote contributory negligence only mitigates damages. *Perry v. Gulf, Mobile & Ohio R. Co.*, 502 F.2d 1144, 1145 (6th Cir.1974) (applying Tennessee law).

5. The "crashworthiness" doctrine refers to liability for negligence that has caused injuries but not the initial accident.

The Court will therefore weigh the statutory proscription against the four evidentiary arguments GM intends to make. That analysis will lead to the following conclusions: First, contributory negligence is not even available as a defense to products liability under Tennessee law. Second, the doctrine of assumption of the risk, even if allowed under § 604, does not apply based on the facts of this case. Third, the policy, statutory construction, and precedent behind § 604 demonstrate that this evidence must not be allowed with respect to mitigation of damages. Fourth, § 604 does not exclude evidence about whether failure to wear seat belts was the proximate cause of the Plaintiffs' injuries.

### A. Contributory Negligence

■ The logical force behind the contributory negligence argument advanced by General Motors is nonexistent given that the defense is barred by both the statute and Tennessee precedent. The doctrine of proximate contributory negligence is not available as an affirmative defense to strict liability under Tennessee law. *Abbott v. American Honda Motor Co., Inc.*, 682 S.W.2d 206, 209 (Tenn.App.1984). Thus, even if § 604 did not preclude evidence of seat belt use, General Motors still cannot introduce this evidence under a contributory negligence theory as a defense to a claim of unreasonably dangerous defective design.

### B. Assumption of Risk

■ Assumption of the risk is available as an affirmative defense to strict liability claims in Tennessee. *See, e.g., Gann v. International Harvester Co. of Canada, Ltd.*, 712 S.W.2d 100, 105 (Tenn. 1986); *Ellithorpe*, 503 S.W.2d at 521; *Young v. Reliance Electric Co.*, 584 S.W.2d 663, 669 (Tenn.App.1979), *cert. denied*, July 30, 1979. Contrary to Plaintiffs' contention, assumption of the risk is not merely another name for contributory negligence. The Tennessee Supreme Court has elaborated on the distinction between the two tort defense theories:

The two defenses are not synonymous or congruent, even though sometimes the same facts have relevance to both defenses; nor do these defenses rest upon the same policy considerations. [Assumption of the risk] is concerned with the voluntary consent by a claimant to a known risk; [contributory negligence] deals with the unreasonable conduct of the plaintiff as a direct and proximate cause of his own injuries.

*Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn.1988).

The Tennessee Supreme Court in *Ellithorpe*, 503 S.W.2d 516, defined the elements of assumption of the risk as: (1) discovery of the defect by the plaintiff, (2) full knowledge about the danger it presents to her, and (3) disregard of this known danger and voluntarily exposure to the defect. *Id.* at 522. The standard is subjective and depends on the situation of the plaintiff. *Prosser & Keeton on Torts*, § 68 at 487 (5th ed. 1984).

■ General Motors suggests that the Plaintiffs, by failing to wear their available seat belts, voluntarily accepted the additional risk of injury possible in the event of an accident. That theory conflicts with § 604 and the facts of this case.

Ordinarily, evidence about whether a plaintiff assumed a risk may be allowed under Tennessee law in a strict liability case. There is no inherent right for Tennessee defendants to present evidence on this issue. "When state law creates a cause of action, the State is free to define the defenses to that claim...." *Ferri v. Ackerman*, 444 U.S. 193, 198, 100 S.Ct. 402, 406, 62 L.Ed.2d 355 (1979). Indeed, but for the express provision of § 604, the plaintiffs' failure to use their safety belts clearly would be relevant to GM's defense.

In this case, § 604 must be read as creating an exception to the general rule of admissibility in Tennessee. The language of § 604 is unequivocally broad ("nor shall such failure to wear a safety belt be admissible as evidence in a trial of any civil action") and is limited only by § 605, as discussed *infra*. Moreover, the assumption of risk doctrine does not neatly apply

to a passenger riding in the rear seat of a car. Assumption of risk is based foremost on the proposition that the plaintiff understands that a risk is present.[6] A rear seat passenger cannot necessarily determine if a danger is presented by failing to wear her seat belt. As the Tennessee legislature has recognized, a rear seat passenger in a vehicle with only lap belts cannot be faulted for failing to buckle up, when that very precautionary measure might actually enhance the possibility of the passenger's injuries. In fact, plaintiff Ofray Hall stated in his May 23, 1989 deposition that he does not use back seat belts that only have a lap belt because of what he perceives to be a greater risk of injury. Hall Depo. at 107. Failure to wear seat belts cannot be labeled as assumption of the risk in this case.

## C. Mitigation of Damages

■ Statutory construction and precedent demonstrate that § 604 bars evidence about non-use of seat belts to prove that the plaintiffs had an opportunity to mitigate damages. While § 604 does not include the mitigation of damages language found in the prior seat belt statute, that does not necessarily mean that the Tennessee legislature intended for such evidence to be introduced to help prove such a defense.

Most important, if General Motors were allowed to introduce evidence about seat belt non-use on this issue, it would raise a fundamental conflict with the policy behind the statute. The mitigation of damages doctrine is based on a duty by the plaintiff to take reasonable steps to decrease the possibility of injury following an automobile accident. The Tennessee legislature, however, has expressly disclaimed that rear seat passengers have a duty to wear seat belts. Admitting evidence that could be used to help prove mitigation would subvert the Tennessee legislature's goal in passing the mandatory safety belt statute in 1986. It also would be equivalent to

implying a general duty to wear safety belts, even for rear seat passengers.

In addition to policy considerations, the statutory construction of § 604 further weighs against admitting seat belt evidence on the issue of mitigation of damages. First, the statute's new language is much broader than the wording of the prior statute. The wording of § 604 provides ample room to include the doctrine of mitigation of damages under its scope.

Second, the rejection of the House amendment discussed *supra* (that would have allowed evidence about non-use of seat belts in support of a mitigation of damages defense) indicates that the Tennessee legislature did not intend the bill to include the provisions embodied in the rejected amendment. 2A Sands, *Sutherland on Statutory Construction,* § 48.18 at 341; *Tahoe Regional Planning Agency v. McKay,* 769 F.2d 534, 538 (9th Cir.1985). While the language of rejected alternative legislation may not help to interpret the final legislation in some situations, *United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1184 (6th Cir.1982) (construing the Clean Air Act), *aff'd,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984), in this case the amendment that would have instituted a limited seat belt defense was discarded by legislators in favor of retaining the long-standing Tennessee law barring use of seat belt evidence.

Third, General Motors' argument is undermined by T.C.A. § 55-9-605. Section 604 must be read in conjunction with § 605, entitled "Liability of manufacturer." Section 605 provides that:

The provisions of this part shall not be construed to relieve the manufacturer of any product regulated pursuant to the provisions of this part from any liability concerning such product which existed prior to April 21, 1986, nor shall any criminal or civil liability for such product be construed to be waived by any provisions of this part. This shall not be

---

**6.** "Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he had no knowledge. Moreover, he must not only know of the facts which create the danger, but he must comprehend and appreciate the nature of the danger he confronts." *Prosser & Keeton on Torts,* § 68 at 487 (5th ed. 1984).

construed as establishing, or creating, strict liability on the part of the manufacturer.

A reasonable interpretation of that statutory language is that the substantive elements of former § 930 still are incorporated under the current version of the statute and were not rendered irrelevant by legislative fiat prior to April 21, 1986. Prior to the enactment of § 604, former § 930 provided that a car manufacturer could not avoid liability concerning its product due to a plaintiff's pre-accident failure to mitigate damages by wearing a seat belt. *Stallcup* explored the scope of Tennessee's prior seat belt statute and held that the plain meaning of that former statute barred evidence about remote contributory negligence and the related doctrine of mitigation of damages. *Stallcup*, 463 S.W.2d 416. Thus, § 604 bars evidence of seat belt nonuse to establish failure to mitigate damages.

### D. Proximate Cause

Finally, § 604 does not address whether a defendant may argue that a plaintiff's failure to use an available passenger restraint constituted the proximate cause of his injuries. General Motors contends that it should be allowed to demonstrate that the plaintiffs' injuries arose from their failure to wear safety belts rather than the alleged design defect. Unlike the three defenses examined *supra*, the Court finds that evidence about causation should be allowed in this case based on the purpose and construction of the Act.

It is well settled that a plaintiff may not prevail merely upon a showing that the defendant's product was defective or unreasonably dangerous and that she was injured. Just as is the case in a negligence action, a products liability claim must include the element of proximate causation of the plaintiff's injuries, a determination "ordinarily for the finder of fact." *Young*, 584 S.W.2d at 668 (citing *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276, 280–81 (Tenn.App.1977)). The Tennessee Supreme Court has held that to establish proximate causation in a negligence action,

the primary issue is whether "the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of...." *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (1991). Accord *Lancaster v. Montesi*, 216 Tenn. 50, 57, 390 S.W.2d 217, 221 (1965) (to establish proximate cause, it is not required that a cause be the sole cause, the last act, or the one nearest to the injury, as long as it is a substantial factor causing the injury).

Section 605 provides that the Act does nothing to alter the definition of strict liability. It specifically disclaims either the creation or establishment of a stripped-down version of strict liability upon motor vehicle manufacturers. While manufacturers are still liable to plaintiffs under a strict liability theory following passage of the Act, it did not create absolute liability for such manufacturers.

It is a well-established tenet of statutory construction that a court construing a statute must consider the statute as a whole in light of its general purpose. *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 735 (Tenn.App.1989). When the question whether an injured person was not wearing a safety belt bears on what proximately caused the specific injuries, the court should read § 604's categorical exclusion of such evidence as qualified by § 605's declaration that the Act is not to be construed as imposing strict liability.

Thus, in this case, the Plaintiffs must prove by a preponderance of the evidence that the allegedly defective axle on the General Motors van caused their injuries. Tennessee courts have recognized that an omission (the lack of an adequate axle) can be the effective *cause* of an injury. *See, e.g., Solomon v. Hall*, 767 S.W.2d 158 (Tenn.App.1988). To prevent General Motors from introducing evidence that the Plaintiffs' injuries were the result of being thrown from the van would be taking a step toward the imposition of absolute liability. *See, e.g., LaHue v. General Motors Corp.*, 716 F.Supp. 407, 416 (W.D.Mo.1989) (holding that seat belt evidence was relevant to the question of causation because a defendant should not be liable for harm

which that defendant did not cause by way of a design defect).

Perhaps the best support for allowing the evidence to prove causation comes from *Sours* itself. Although the Sixth Circuit looked to state law, it found no reversible error in the admission of evidence that the plaintiff's injuries resulted from failure to wear the seat belt, rather than the defective roof charged by the plaintiff. *Id.* at 1521. Thus, the *Sours* court recognized the defendant's right to disprove the plaintiff's theory of causation, and found in that particular case that the jury simply had rejected the defendant's theory. *Id.* at 1522.

In fact, several car crash cases decided subsequent to the 1986 Act have admitted evidence about the plaintiff's failure to wear a seat belt. *See, e.g., Duffel v. Buchanan*, No. 88–326–II, 1989 WL 101771 (Tenn.App.1989) (available on LEXIS) (no discussion of § 604 but evidence at trial showed that plaintiff was not wearing her seat belt at the time of the accident); *Elmore v. Cumberland Cty. Rd. Dept.*, No. 88–25, 1988 WL 31776 (Tenn.App.1988) (available on LEXIS) (same). Moreover, at least one Tennessee court even interpreted the predecessor to § 604 to allow some evidence about seat belt use. *Stallcup* does not support the plaintiffs' argument that evidence about seat belt usage is *entirely* inadmissible under Tennessee law. The appellate court observed that such evidence was allowed by the trial court and that it established that the plaintiff was not wearing her safety belt. *Id.* at 422. The issue on appeal was not the admissibility of the evidence showing plaintiff's failure to wear a safety belt, but rather the substantive impact of that omission on her right to recover from the defendant. In construing the statute, the court did not discuss the potential substantive relevance of evidence of safety belt nonuse to an issue such as proximate cause.

■ At first glance, General Motors' causation argument seems like a subterfuge to avoid the strictures of § 604. As this Court has explained, however, GM's ability to introduce seat belt evidence depends on the theory for which its introduction is sought. The doctrines of contributory negligence and assumption of the risk are intertwined with causation issues. Contributory negligence is merely the negligent act of a plaintiff which is the proximate cause of the plaintiff's injury. Admitting evidence only with respect to causation may complicate the issue for the jury, but it is by no means an insurmountable problem. Courts often admit evidence for one purpose that cannot be considered by the jury for other purposes (*e.g.* the state of mind exception to the general rule against hearsay). This Court can easily admonish the jury that seat belt evidence may be considered only on the question on proximate causation. Consequently, General Motors may be allowed to introduce evidence about the Plaintiffs' failure to wear seat belts only as it relates to the element of causation. This portion of the Plaintiffs' Motion to Strike therefore is DENIED.

### VIII.

For the foregoing reasons the Plaintiffs' Motion to Strike Affirmative Defenses is DENIED IN PART and GRANTED IN PART. The Court finds that T.C.A. § 55–9–604 was not rendered null and void pursuant to § 609(b) and that § 604 applies to the General Motors van involved in the Plaintiffs' accident. Moreover, the facts in this case do not present a question about whether § 604 is preempted by the National Motor Vehicle Safety Act, 15 U.S.C. §§ 1381 *et seq.*

Further, the Court rules that § 604 governs the admissibility of evidence about seat belt use. Accordingly, all evidence of the Plaintiffs' nonuse of seat belts relating to the defenses of contributory negligence, assumption of risk, and mitigation of damages shall be excluded from the trial. By contrast, evidence with respect to nonuse of seat belts may be admitted on the issue of proximate causation.

Finally, the Court need not address the due process or equal protection clause claims, since General Motors may introduce

evidence about seat belt use on the element of causation.