**Harold H. HOOD and Sandra T. Hood, Plaintiffs–Appellees,**

**v.**

**ROADTEC, INC., and Astec Industries, Inc., Defendants–Appellants.**

Court of Appeals of Tennessee, Eastern Section.

June 30, 1989.

Rehearing Denied Aug. 18, 1989.

Application for Permission to Appeal Denied by Supreme Court Jan. 8, 1990.

Richard W. Bethea, Jr. and Ronald D. Gorsline, Chattanooga, for defendants-appellants.

W. Holt Smith, Madisonville, Flossie Weill, Chattanooga, for plaintiffs-appellees.

## OPINION

GODDARD, Judge.

In this products liability action, Roadtec, Inc., and Astec Industries, Inc., Defendants–Appellants, appeal a jury verdict in favor of Harold and Sandra Hood, Plaintiffs–Appellees. The Defendants urge this Court to vacate the judgment below and order a new trial, primarily because of the Plaintiffs' failure to disclose the identity of a witness during the principal discovery stage of the lawsuit. For the reasons that follow, we vacate the judgment below and remand the case for a new trial.

In August 1986, the Hoods filed suit against the Defendants, both Tennessee corporations engaged in the business of designing, manufacturing, and selling road paving equipment. Roadtec is a wholly-owned subsidiary of Astec. The Hoods sought compensation for injuries suffered by Mr. Hood in a road construction accident involving a road paving machine manufactured and sold to Mr. Hood's employer by Roadtec.

The accident occurred at the end of the working day when a paving crew, working under the supervision of Mr. Hood, had finished paving a section of road. At the direction of Mr. Hood, the operator of the self-propelled paver, Mr. Tipton, drove the paver to the edge of an embankment by the roadside in order to discharge asphalt that was still contained inside the paver. Two employees shoveled the asphalt down the embankment as it was being discharged. Thereafter, Mr. Tipton drove the paver forward, perpendicular to the road, with the back portion of the paver approximately six to nine feet from the edge of the embankment. Mr. Tipton testified that he then engaged the emergency brakes and got up from his seat to change gears. At this point, the paver began to roll backwards toward the embankment. Mr. Tipton testified that he returned to the driver's seat and applied the foot brakes which failed. He jumped from the paver as it was about to go over the embankment.

Mr. Hood, seeing that the paver was rolling toward the two men working behind it, stepped up onto the back portion of the paver and attempted to engage the emergency brakes three or four times but to no avail. He testified that when he climbed onto the paver, the emergency brake was already in the on position. He jumped off the machine as it rolled off the embankment. However, the machine landed on top of him, severely injuring his legs.

In their complaint, the Hoods set forth claims based on strict liability, negligence, and breach of warranty. At trial, the Plaintiffs submitted the case to the jury solely on the theory of strict liability.

The jury returned a verdict in favor of Mr. Hood in the amount of $850,000 and in favor of Mrs. Hood in the amount of $100,000. Pursuant to a compromise agreement between the parties, judgment was entered against the Defendants in the amount of $675,000 for Mr. Hood and $75,000 for Mrs. Hood.[1]

The Defendants maintained at trial that the accident could not have happened in the manner in which Mr. Hood claims, highlighting the fact that both the emergency and foot brakes of the paver worked immediately before and after the accident. Specifically, the Defendants' experts asserted that it was impossible for separate and independent braking systems (parking brakes and foot brakes) to both work one moment, stop working the next, and then both suddenly start operating again. Their aim was to prove that the accident was caused by operator error instead of a defect in the paver.

■ The first two issues raised by the Defendants concern the testimony of Willie Wooden whose identity was not disclosed during the principal discovery efforts of the parties, but whose deposition was ultimately taken on March 31, 1988, five days before the trial. Shortly after the case was commenced, the Defendants propounded an interrogatory request to the Plaintiff which stated:

> 2. Identify ... all persons known to you who have knowledge or information pertaining to your allegations in this action or to the accident, and with respect to each such person, identify ... and describe the substance of his knowledge or information.

It was not until three weeks prior to trial and after four motions to compel and threats of dismissal by the Trial Judge, that the Plaintiffs disclosed the identity of Mr. Wooden in a witness list. Specifically, eleven days prior to trial, the Plaintiffs disclosed that Mr. Wooden, an employee of

---

**1.** The jury verdict was reduced pursuant to an agreement between the parties wherein Astec

Industries waived its right to contest its liability in the bifurcated portion of the trial.

a contractor who had borrowed the subject paver from Mr. Hood's employer on several occasions in the past, had experienced similar problems with the brakes both before and after Mr. Hood's accident. His testimony as to the incident before Mr. Hood was injured was allowed over the objections of the Defendants which were made at the pre-trial conference three days before trial and at the trial itself. The Trial Judge offered the Defendants a continuance of two or three days which was refused. He then ruled that there was no prejudice to the Defendants by allowing Mr. Wooden to testify.

The Defendants maintain that Mr. Wooden's testimony should have been excluded because his identity was not disclosed before the Defendants had fully developed a defense to support their theory of the case. The Plaintiffs assert that the Defendants knew of Mr. Wooden despite the omission of his identity prior to the witness list and that in any event his testimony was cumulative.

■ In determining whether a previously unnamed witness should be prevented from testifying, courts are to consider the reasons given for the failure to disclose the person's identity, the importance of the testimony, the need for time to prepare to meet the testimony, and the possibility of a continuance. *Strickland v. Strickland,* 618 S.W.2d 496 (Tenn.App.1981). As was made clear in *Strickland,* the broad scope of the discovery rules was in an intentional effort to rid trials of the element of surprise, which often led, prior to the adoption of the present discovery rules, to results based on unexpected legal maneuvering rather than upon the merits. Obviously, failing to disclose the identity of persons with discoverable knowledge prevents litigants from making adequate trial preparations.

With the factors set forth in *Strickland* as a guide, we are persuaded that the Trial Judge should have excluded the testimony of Mr. Wooden or at least have granted a

longer continuance. The record shows that the Plaintiffs' counsel had interviewed Mr. Wooden three months before being asked to produce the names of people with discoverable knowledge in the interrogatory request. Mr. Wooden was again interviewed by the Plaintiffs' counsel some two months prior to trial. Yet, his identity and the substance of his testimony, was not disclosed in any manner until two weeks before trial when witness lists were exchanged.[2]

We agree with the Trial Judge that there was no excuse for not revealing the identity of Mr. Wooden prior to the exchange of the witness lists. We find nothing in the record to support the Plaintiffs' assertion that the Defendants knew of the problems experienced by Mr. Wooden prior to the time that his name appeared on the witness list. Mr. Wooden stated in his deposition that he had never told the Defendants that the brakes on the paver did not work, but only that he did not like the brakes. In short, the record lacks any credible reason to justify the non-disclosure.

We also reject the Plaintiffs' argument that the Defendants were not prejudiced by the late disclosure. Mr. Wooden was the only person who claimed to have had an experience with the paver similar to that of Mr. Hood. Further, the Plaintiffs concede that Mr. Wooden's testimony was significant because it was the only evidence offered by the Plaintiffs to rebut the Defendants' theory that the accident could not have happened in the manner which the Plaintiffs claimed.

Additionally, the disclosure was not made until after the Defendants' experts had conducted numerous tests on the paver and had otherwise prepared for trial, all without the benefit of Mr. Wooden's knowledge concerning the failed brakes. In other words, the Defendants had no reason not to proceed with their investigation and trial preparations based on the assumption that no one had ever experienced a situation in which both the parking brakes and

**2.** The witness list contained the names of at least 83 possible witnesses, 29 of which the

Defendants assert they had never heard of.

foot brakes had failed simultaneously. In fact, when the Plaintiffs' counsel had realized that this was the Defendants' theory of the case, Mr. Wooden was interviewed again two months prior to trial. At this point, Mr. Wooden's identity should have certainly been disclosed in the face of supplementation requests made by the Defendants. When Mr. Wooden's identity was finally disclosed in the witness list, the Defendants had already completed their testing and trial preparations and the two or three day continuance which was offered by the Trial Court would not have changed this fact. More importantly, the short continuance would not have been sufficient time for the Defendants to have completely reoriented their defense.

Finally, we are not persuaded by the Plaintiffs' argument that Mr. Wooden's testimony was harmless error. Rather, it appears that he was the only person to have had any knowledge that both braking systems had failed simultaneously in the past. The Plaintiffs concede that Mr. Wooden's testimony was unique in this regard because it goes to the very heart of the Defendants' theory of the case.

In view of the foregoing discussion, we hold as already noted that Mr. Wooden's testimony should have been excluded just as the unnamed witness was excluded in *Strickland* or an appropriate continuance granted. We find no credible excuse presented by the Plaintiffs as to why Mr. Wooden's identity, a critical witness at trial by their own admission, was not disclosed at the proper time. The Plaintiffs' own counsel makes no claim that the late disclosure was merely inadvertent. The situation presented by this case is precisely what the discovery rules are designed to prevent—a total surprise at trial. Even if we were to assume the error was harmless, allowing such conduct would be prejudicial to the judicial system as contemplated by Rule 36 of the Tennessee Rules of Appellate Procedure.

■ The third question raised by the Defendants is whether the Trial Court properly excluded evidence of other lawsuits filed by the Plaintiffs against various Defendants arising out of the same accident. We answer in the affirmative because when the Plaintiffs took a non-suit at trial on the theories of negligence and breach of warranty, the evidence of the other lawsuits was not contradictory or inconsistent with the Plaintiffs' products liability contentions. Thus, they were properly excluded. See *Pankow v. Mitchell*, 737 S.W.2d 293 (Tenn.App.1987); *Blackmon v. Estate of Wilson*, 709 S.W.2d 596 (Tenn.App.1986). At trial, defense counsel conceded that the liability of the Defendants would not be affected as to the strict liability theory insofar as the component part manufacturers are concerned.

■ The fourth issue is whether evidence concerning the Defendants' design and manufacturing processes should have been excluded once the Plaintiffs voluntarily elected to proceed solely on the basis of strict products liability. On this question, we hold that the evidence concerning the Defendants' own conduct relative to manufacturing and design processes was relevant and admissible as circumstantial proof on the question of whether the paver was defective or unreasonably dangerous. T.C.A. 29–28–105(b) provides that in determining whether a product is defective or unreasonably dangerous, consideration may be given to "customary designs, methods, standards and techniques of manufacturing, inspecting and testing...." Further, our cases have specifically held that circumstantial evidence is admissible in a strict products liability action to show that the product was defective or unreasonably dangerous. *Browder v. Pettigrew*, 541 S.W.2d 402 (Tenn.1976); *Motley v. Fluid Power of Memphis, Inc.*, 640 S.W.2d 222 (Tenn.App.1982).

■ The next question presented is whether the Trial Court should have directed a verdict in favor of the Defendants on the basis that Mr. Hood assumed the risk of injury by boarding the paver in an attempt to stop it. Our Supreme Court has stated that assumption of risk is a defense in a strict liability action where, among other things, the plaintiff voluntarily and unreasonably proceeds to encounter a

known danger. *Ellithorpe v. Ford Motor Company*, 503 S.W.2d 516 (Tenn.1973).

We are not convinced that Mr. Hood acted unreasonably in trying to stop the machine from rolling over the two men working behind it. A plaintiff's acceptance of the risk is not voluntary if he reasonably acted to avert harm to others. *Restatement (Second) of Torts*, § 496E (1965). Further, Mr. Hood had no way of knowing that when he applied the emergency brakes that they would not engage. Thus, it cannot be said that he fully appreciated the degree of danger which he was about to encounter. A general apprehension of danger is not sufficient. See *Gann v. International Harvester Co. of Canada*, 712 S.W.2d 100 (Tenn.1986); *Haga v. Blanc & West Lumber Co. Inc.*, 666 S.W.2d 61 (Tenn.1984).

The final issue raised by the Defendants is whether the rescue doctrine applies to strict liability actions. We reject outright the Defendants' assertion that the rescue doctrine is limited to negligence actions. In *Caldwell v. Ford Motor Co.*, 619 S.W.2d 534 (Tenn.App.1981), this Court specifically applied the rescue doctrine to a case in which liability was predicated upon strict products liability. The Defendants concede as much in their briefs. We hold that the Trial Court correctly charged the jury with respect to the rescue doctrine.

For the foregoing reasons the judgment is vacated and the case is remanded for a new trial. Costs of appeal are adjudged against the Plaintiffs.

SANDERS, P.J. (E.S.), and ANDERSON, J., concur.

## OPINION ON PETITION TO REHEAR

Harold and Sandra Hood, Plaintiffs–Appellees, have filed a petition to rehear, motion to supplement the abridged record and Plaintiffs–Appellees' appendix, and a motion to exceed the page limit on the petition to rehear. Roadtec, Inc., and Astec Industries, Inc., Defendants–Appellants, have filed a motion requesting that this Court, pursuant to Rule 11 of the Tennessee Rules of Civil Procedure and T.C.A. 27–1–122,[1] impose sanctions against the Plaintiffs and their counsel and to set this matter for a hearing.

First, the Plaintiffs assert in their petition to rehear that counsel never intentionally withheld the identity of Mr. Wooden or engaged in deliberate discovery abuse. This Court never held to the contrary. Our opinion states that "[w]e find no credible excuse ... as to why Mr. Wooden's identity ... was not disclosed at the proper time." This does not imply that the non-disclosure was intentional or deliberate—it could have been inadvertent or negligent. Regardless of the characterization, the identity of Mr. Wooden was not disclosed in a timely fashion.

Second, the argument is made that the Trial Court was willing to continue the case for several weeks. Certainly a lengthy continuance was contemplated *after* selecting a jury. However, *all* counsel expressed doubts about empaneling a jury and then waiting several weeks before trying the case. Plaintiffs' counsel stated to the Trial Judge that proceeding in such a fashion would not be "wise."

Third, the Plaintiffs advance the proposition that the Defendants were not prejudiced by the late disclosure. In their brief, the Plaintiffs conceded that Mr. Wooden's testimony was unique in that it went to the very heart of the Defendants' theory of what really happened when Mr. Hood was injured. Upon re-examination of this issue, the Court adheres to the view expressed in the opinion.

As to the motion by the Defendants that we impose sanctions upon the Plaintiffs and their counsel pursuant to Rule 11 of the Tennessee Rules of Civil Procedure and T.C.A. 27–1–122, we note

---

1. "When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal."

that Rule 11 does not apply to the appellate courts. Rule 1, Tennessee Rules of Civil Procedure. Further, we do not regard the petition to rehear and related motions frivolous for purposes of T.C.A. 27–1–122. The request to hear the matter orally is denied.

For the foregoing reasons the petition to rehear is denied as is the motion to supplement the record. The Plaintiffs' motion to exceed the page limit with respect to the petition to rehear is granted. Finally, we decline to impose sanctions upon the Plaintiffs or their counsel as urged by the Defendants or to set the matter for hearing. Costs are adjudged against the Plaintiffs except for costs incident to the motion for sanctions, which are taxed against the Defendants.

SANDERS, P.J. (E.S.), and ANDERSON, J., concur.