Irene McKINNIE, Plaintiff,

v.

LUNDELL MANUFACTURING COMPANY, INC., Defendant.

No. 92–1237.

United States District Court, W.D. Tennessee, E.D.

June 25, 1993.

T.J. Emison, Jr., Alamo, TN, for plaintiff.

Lewis L. Cobb, Jackson, TN, for defendant.

### ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DEFENSES

TODD, District Judge.

Plaintiff Irene McKinnie ("Plaintiff") brought this products liability action against Defendant Lundell Manufacturing Company, Inc. ("Defendant") in the Circuit Court for Gibson County, Tennessee, alleging that Plaintiff's son died as a result of the defective and unreasonably dangerous condition of a shredder manufactured by Defendant. Defendant removed the action to this court on the basis of diversity of citizenship. Before the court is Plaintiff's motion to strike certain of Defendant's defenses. For the reasons set forth below, Plaintiff's motion is DENIED.

Federal Rule of Civil Procedure 12(f) provides that, "[u]pon motion made by a party ..., the court may order stricken from any pleading any insufficient defense." Fed. R.Civ.P. 12(f). Although motions to strike affirmative defenses pursuant to Rule 12(f) are generally disfavored, such motions are within the sound discretion of the district court. *Federal Sav. & Loan Ins. Corp. v. Burdette,* 696 F.Supp. 1183, 1186 (E.D.Tenn. 1988); *see Federal Deposit Ins. Corp. v. Butcher,* 660 F.Supp. 1274, 1277 (E.D.Tenn. 1987); *Federal Deposit Ins. Corp. v. Berry,* 659 F.Supp. 1475, 1479 (E.D.Tenn.1987). "An affirmative defense is immaterial if it bears no essential or important relationship to the primary claim for relief." *Burdette,* 696 F.Supp. at 1186 (citing *Butcher,* 660 F.Supp. at 1277; *Berry,* 659 F.Supp. at 1479). "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstances." *Id.* (citing *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953); *United States v. Hardage,* 116 F.R.D. 460, 463 (W.D.Okla.1987)).

When jurisdiction is founded on diversity of citizenship, a federal court must apply the forum state's substantive law, including the forum state's choice of law rule. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Boyd v. LaMaster,* 927 F.2d 237, 239 (6th Cir.1991); *MacDonald v. General Motors Corp.,* 784 F.Supp. 486, 490 (M.D.Tenn. 1992). Tennessee tort law provides that, in strict liability actions as well as negligence suits, choice of law is governed by the law of the state where the injury occurred unless "'some other state has a more significant relationship ... to the occurrence and the parties.'" *Hataway v. McKinley,* 830 S.W.2d 53, 57, 59 (Tenn.1992) (quoting Restatement (Second) Conflict of Laws §§ 146, 175 (1971)) (abandoning traditional *lex loci delictus* doctrine); *see Winters v. Maxey,* 481 S.W.2d 755, 756–59 (Tenn.1972); *see also MacDonald,* 784 F.Supp. at 490; *Myers v. Hayes Int'l Corp.,* 701 F.Supp. 618, 620 (M.D.Tenn.1988); *Babcock v. Maple Leaf, Inc.,* 424 F.Supp. 428, 432 (E.D.Tenn.1976).

In this case, Plaintiff—a Tennessee resident—alleges that her son—also a Tennessee resident—was killed at the Humboldt Recycling Plant in Humboldt, Tennessee. (Compl. paras. 3–5.) This action's sole relationship with any state other than Tennessee is Defendant's status as an Iowa corporation. Because the injury occurred in Tennessee, and because no other state has a more significant relationship to the events and parties in this case, Tennessee law governs this products liability action. *Hataway*, 830 S.W.2d at 59–60. *See Bailey v. Chattem, Inc.*, 684 F.2d 386, 392 (6th Cir.1982) (quoting *Koehler v. Cummings*, 380 F.Supp. 1294, 1305 (M.D.Tenn.1974)); *MacDonald*, 784 F.Supp. at 490; *Myers*, 701 F.Supp. at 620.

Plaintiff's complaint alleges that Plaintiff's son was killed as a result of a "defective and unreasonably dangerous" slow-speed shredder manufactured by Defendant. (Compl. paras. 5–6.) Plaintiff asserts that Defendant is strictly liable for the injury caused by its allegedly defective product. (Pl.'s Mem. Supp.Mot.Strike at 1–2.) Plaintiff does not, however, assert negligence as a basis for recovery. (*Id.*) Therefore, this action is governed by the Tennessee Products Liability Act of 1978 ("Act"), Tenn.Code Ann. §§ 29–28–101 to 108 (1980 & Supp.1992),[1] and defenses that do not apply to strict liability claims are immaterial and insufficient.

In its answer, Defendant asserts several defenses: (1) specific denials of certain of the allegations in Plaintiff's complaint; (2) that Plaintiff's son assumed the risk of injury arising from the shredder; (3) that the shredder was not defective at the time it left Defendant's control; (4) that Plaintiff's son's death resulted from the negligence of a person or persons other than Defendant, thereby reducing Defendant's liability; and (5) that Defendant complied with the appropriate state and federal statutes and regulations governing design, labeling and warning, and instructions for using the shredder. (Answer paras. 1–9.) Plaintiff moves to strike Defendant's second, fourth, and fifth defenses.

## A. DEFENDANT'S COMPLIANCE WITH STATE AND FEDERAL LAWS

■ Plaintiff moves to strike Defendant's fifth defense—Defendant's compliance with the appropriate state and federal statutes and regulations—on the basis that this defense fails to conform with the requirements of Federal Rule of Civil Procedure 8(c). Rule 8(c) provides that "a party shall set forth affirmatively ... any ... matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(c). "The key for determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir.1979); *see Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1274, at 323 (2d ed. 1990). Plaintiff claims that Defendant's fifth defense fails the "fair notice" test because Defendant has not identified the specific statutes and regulations relied upon. Defendant's pleading, however, provides sufficient notice to Plaintiff of the nature of the defense raised—that Defendant intends to assert statutory and regulatory compliance as a defense to this action. In addition, Defendant's answer identifies the scope of the statutes and regulations relied upon as "[f]ederal or [s]tate statutes or regulations in existence at the time the product was manufactured for design and labeling and warning and instructions for use of the product." (Answer para. 9.) Plaintiff should use discovery procedures to achieve any greater specificity as to the statutes and regulations with which Defendant contends it complied. Accordingly, the court DENIES Plaintiff's motion to strike Defendant's fifth defense.

## B. COMPARATIVE FAULT AND ASSUMPTION OF RISK

■ Plaintiff also moves to strike Defendant's second and fourth defenses—that

---

1. The Act provides that "[a] manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn.Code Ann. § 29–28–105(a) (1980).

Plaintiff's son assumed the risk of injury by the shredder and the son's death resulted from the negligence of a person or persons other than Defendant. Plaintiff does not assert Defendant's negligence as a basis for recovery. Rather, Plaintiff's sole theory of liability is the alleged defective and unreasonably dangerous condition of the slow-speed shredder manufactured by Defendant. Defendant contends that, because it "raised the defenses of contributory negligence and assumption of risk simply to give the plaintiff fair notice that the issue of relevant [sic] fault would be raised at trial," the court should not strike the defense. (*See* Def.'s Response Pl.'s Mot.Strike at 2.) The court's inquiry is whether, under Tennessee law, the defenses of assumption of risk and comparative fault could, under any set of circumstances, succeed against a strict products liability claim.

Tennessee tort law has recently undergone substantial changes. In *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992), the Tennessee Supreme Court abandoned the traditional contributory negligence doctrine and adopted comparative fault. *Id.* at 57.[2] Although the *McIntyre* court attempted to provide guidance to courts employing the new

comparative fault standard, the court failed to resolve several issues concerning Tennessee tort law. *Id.* at 57–58 (noting that its "decision affect[ed] numerous legal principles surrounding tort litigation" and, that "harmonizing these principles with comparative fault must await another day"); *see generally Comparative Negligence Symposium*, 23 Mem.St.U.L.Rev. 1 (1992) (analyzing *McIntyre* and its impact on related issues of Tennessee tort law). The Tennessee Supreme Court's adoption of comparative fault in negligence actions requires a determination of whether courts should extend comparative fault principles to strict liability cases. The Tennessee Supreme Court has not addressed this issue. Therefore, this court must "make a considered 'educated guess' as to what decision the Supreme Court of Tennessee would reach." *Lee v. Crenshaw*, 562 F.2d 380, 381 (6th Cir.1977).[3]

In cases decided prior to *McIntyre*, Tennessee courts had repeatedly held that the mere assertion of the plaintiff's negligence did not bar recovery in a strict products liability action brought in Tennessee. *E.g., Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516, 521 (Tenn.1973) ("Ordinary negligence,

**2.** In *McIntyre*, Tennessee became the forty-sixth state to adopt some form of comparative negligence. The *McIntyre* court joined nine other jurisdictions in adopting the "49%" rule of modified comparative fault (Arkansas, Colorado, Georgia, Idaho, Kansas, Maine, North Dakota, Utah, and West Virginia). Currently, thirteen states employ "pure" comparative negligence (Alaska, Arizona, California, Florida, Kentucky, Louisiana, Mississippi, Missouri, Michigan, New Mexico, New York, Rhode Island, and Washington); twenty-one states use the "50%" rule of modified comparative negligence (Connecticut, Delaware, Hawaii, Illinois, Indiana, Iowa, Massachusetts, Minnesota, Montana, Nevada, New Hampshire, New Jersey, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Texas, Vermont, Wisconsin, and Wyoming); and two states utilize a "slight-gross" system whereby a plaintiff may recover only if his negligence is "slight" in comparison to the defendant's (Nebraska and South Dakota). Only four states still employ the traditional contributory negligence doctrine (Alabama, Maryland, North Carolina, and Virginia). *McIntyre*, 833 S.W.2d at 55–57 & nn. 3–6 (citing cases and statutes of jurisdictions adopting comparative fault).

**3.** Presently, Tennessee has no procedure for certifying questions of state law directly from federal district courts to the Tennessee Supreme

Court. *Compare* Tenn.Sup.Ct.R. 23, § 1 ("The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States or a Court of Appeals of the United States.") *with* Ohio Sup.Ct.R. XVI, § 1 ("The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or a United States District Court."). Other jurisdictions allow certification of questions of state law from United States district courts. *See* Ala. Const. art. VI, § 6.02; Va. Const. art. VI, § 1; Del. Const. art. IV, § 11(9); Ariz.Rev.Stat.Ann. § 12–1861 (1992); Conn.Gen.Stat. § 51–199a(b) (1990); Haw.Rev.Stat. § 602–5(2) (1992); Iowa Code § 684A.1 (1992); Kan.Stat.Ann. § 60–3201 (1991); Md.Cts. & Jud.Proc.Code Ann. § 12–601 (1992); Minn.Stat. § 480.061(1) (1992); Mo.Rev. Stat. § 477.004(1) (1991); Neb.Rev.Stat. § 24–219 (1992); Okla.Stat. tit. 20, § 1602 (1992); Or.Rev.Stat. § 28.200 (1991); S.D.Codified Laws Ann. § 15–24A–1 (1993); Utah Code Ann. § 78–2–2(1) (1992); Wash.Rev.Code § 2.60.010—.020 (1991); W.Va. Code § 51–1A–1 (1992); Wyo. Stat. § 1–13–106 (1992); Ky.R.Civ.P. 76.37(1); Mont.R.App.Proc. 44(a).

defined generally as the failure to exercise the care of a reasonably prudent man, is not a proper defense to strict liability actions."); *Abbott v. American Honda Motor Co.*, 682 S.W.2d 206, 209 (Tenn.Ct.App.1984) ("[C]ontributory negligence cannot be applied as a defense to strict liability."); *see Sterling v. Velsicol Chem. Corp.*, 647 F.Supp. 303, 313–14 (W.D.Tenn.1986) (applying Tennessee law), *aff'd in part, rev'd in part*, 855 F.2d 1188, 1192 (6th Cir.1988); *Holt v. Stihl, Inc.*, 449 F.Supp. 693, 694 (E.D.Tenn.1977) (applying Tennessee law). The Tennessee Supreme Court recognized two justifications for this rule: (1) "allowing ordinary negligence to bar strict liability would defeat the purposes for which the theory of strict liability was created"; and (2) "Tennessee courts have never allowed contributory negligence as a defense . . . to conduct which is culpable regardless of the care exercised by the defendant." *Ellithorpe*, 503 S.W.2d at 521. Comparative fault's abrogation of the harsh rule of contributory negligence, however, allows for a proportional allocation of liability while addressing the reasons for excluding a plaintiff's negligence as a defense to strict liability.

The Tennessee courts' concerns about the purposes of strict liability emphasize that, by adopting strict liability, the Tennessee Supreme Court intended such actions to differ from actions based on ordinary negligence. *Id.* (quoting *Carney v. Ford Motor Co.*, Prod. Liab.Rep. (CCH) para. 9727 (Tenn.Ct.App. 1970)). Proponents of the traditional rule against allowing a plaintiff's negligence to bar recovery under strict liability contend that allowing the plaintiff's simple negligence to defeat a strict liability claim would "'reduce the action brought under [the strict liability] doctrine to one based on ordinary negligence.'" *Ellithorpe*, 503 S.W.2d at 521 (quoting *Carney v. Ford Motor Co.*, Prod. Liab.Rep. (CCH) para. 6303 (Tenn.Ct.App. 1970)). This argument emphasizes the basic societal policies underlying strict liability: (1) shifting the risk of loss caused by defective or unreasonably dangerous products to the parties most able to bear that loss—the manufacturers; and (2) encouraging manufacturers to take greater care in designing and manufacturing their products. *Ellithorpe*,

503 S.W.2d at 521; *see* Restatement (Second) of Torts § 402A cmt. c (1965). Strict liability, however, is not intended to make the manufacturer the insurer of the product. *See, e.g., Kerley v. Stanley Works*, 553 S.W.2d 80, 84 (Tenn.Ct.App.1977) ("'A manufacturer, . . . is not an insurer of the product he designs, and it is not required that the design adopted be perfect, or render the product accident proof, or incapable of causing injury.'") (quoting 72 C.J.S.Supp. *Products Liability* § 21 (1975) (alteration in original)); *see also Tatum v. Cordis Corp.*, 758 F.Supp. 457, 461 (M.D.Tenn.1991) ("Strict liability is not absolute liability.").

Under a comparative fault system, a plaintiff's negligence does not preclude recovery, but merely reduces the manufacturer's liability. Although strict liability would operate similarly to ordinary negligence as to the reducing effect of a plaintiff's conduct, the two theories of liability would remain distinct in that strict liability actions would not require the plaintiff to prove that the manufacturer breached any duty of care. Unlike traditional contributory negligence, comparative fault would preserve the primary advantage that a plaintiff has in strict liability actions—imposition of liability against the manufacturer without any showing of the manufacturer's negligence. Extending comparative fault to strict liability actions would not defeat this policy underlying the strict liability doctrine. In addition, applying comparative fault to strict liability would not eliminate the deterrent effect of strict liability. Although the comparative fault system might yield smaller awards than traditional strict liability, manufacturers would remain liable for producing defective or unreasonably dangerous products. Incorporating comparative fault principles into products liability actions would also preserve strict liability's goal of shifting the risk of defective products to manufacturers without holding manufacturers liable for injuries resulting from plaintiffs' conduct.

The *McIntyre* court's definition of liability based on "fault" rather than "negligence" addresses the Tennessee Supreme Court's earlier concerns about interposing the plaintiff's negligence as a defense to "conduct

which is culpable regardless of the care exercised by the defendant." *See Ellithorpe*, 503 S.W.2d at 521. Emphasizing "fault" rather than "negligence" appears to have been a conscious decision of the *McIntyre* court. *McIntyre*, 833 S.W.2d at 56. Negligence implies a breach of a duty of care, while fault refers merely to an act imposing liability. *See, e.g., Abbott v. American Honda Motor Co.*, 682 S.W.2d 206, 209 (Tenn.Ct.App.1984) (recognizing that "fault" refers to a broader scope of conduct than "negligence"). The comparative fault system's focus on the parties' relative "fault" avoids the "apples and oranges" argument, which contends that a plaintiff's negligence cannot be effectively compared to a manufacturer's conduct in producing a defective product because strict liability is not predicated on a breach of any duty of care. *See* Carol A. Mutter, *Moving to Comparative Negligence in an Era of Tort Reform: Decisions for Tennessee*, 57 Tenn. L.Rev. 199, 295 (1990); Jerry J. Phillips, *The Case for Judicial Adoption of Comparative Negligence in South Carolina*, 32 S.C.L.Rev. 295, 299 (1980); 1 *Comparative Negligence: Law and Practice* § 9.30[4] (Matthew Bender 1993); Dan B. Dobbs et al., *Prosser and Keeton on the Law of Torts* § 67, at 478 (5th ed. 1984 & Supp.1988). Unlike a negligence-based system, which limits liability to the narrow basis of a party's breach of a duty of care, the fault-based system adopted by the *McIntyre* court allows the fact-finder to weigh the relative conduct of the parties. *See, e.g.,* Unif.Comparative Fault Act § 1(b) cmt., 12 U.L.A. 46 (West Supp.1993) ("Putting out a product that is dangerous to the user or the public ... involves a measure of fault that can be weighed and compared, even though it is not characterized as negligence.").

The Tennessee Supreme Court has acknowledged that, in strict liability actions, the sufficiency of a defense based upon the plaintiff's conduct depends on the *nature* of that conduct, rather than the label applied to that conduct. *Ellithorpe*, 503 S.W.2d at 521 ("Regardless of which label is used, 'contributory negligence' or 'assumption of risk', the courts have generally held that ordinary lack of care is not a defense, while 'voluntarily and unreasonably proceeding to encounter a known danger' is a defense."). This focus on the substance of the defense rather than its form led the Tennessee Court of Appeals to conclude that,

"when a plaintiff, with knowledge of the defect, uses the product in such a manner as to voluntarily and unreasonably encounter a known danger, that act may be plead [sic] as a defense to an action based on strict liability in tort. We do not deem it determinative of the availability of this defense whether it be called negligence, contributory negligence or assumption of risk. It is more a matter of the unreasonableness of permitting a plaintiff to deliberately put in motion a known danger and attempt to profit thereby."

*Ellithorpe*, 503 S.W.2d at 521 (quoting Carney v. Ford Motor Co., Prod.Liab.Rep. (CCH) para. 9727 (Tenn.Ct.App.1970)). Thus, even under traditional strict liability standards, courts recognized that a plaintiff's conduct could preclude recovery. Given this background, this court must predict how the Tennessee Supreme Court would reconcile the policies underlying strict liability and the recent adoption of comparative fault.

Most courts that have addressed the issue have concluded that incorporating comparative fault principles in strict liability cases does not vitiate the policies underlying strict products liability. *See, e.g., Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 890 (Alaska 1979); *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 386–88, 575 P.2d 1162, 1168–70 (1978); *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 90 (Fla.1976); *Vannoy v. Uniroyal Tire Co.*, 111 Idaho 536, 542, 726 P.2d 648, 654 (1985); *Coney v. J.L.G. Indus.*, 97 Ill.2d 104, 73 Ill.Dec. 337, 342–43, 454 N.E.2d 197, 202–03 (1983); *Albertson v. Volkswagenwerk*, 230 Kan. 368, 634 P.2d 1127, 1131–32 (1981); *Bell v. Jet Wheel Blast, Div. of Ervin Indus.*, 462 So.2d 166, 171 (La.1985); *Brisboy v. Fibreboard Corp.*, 429 Mich. 540, 418 N.W.2d 650, 657 (1988); *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 352 n. 5 (Minn.1981); *Zahrte v. Sturm, Ruger & Co.*, 203 Mont. 90, 661 P.2d 17, 18–19 (1983); *Suter v. San Angelo Foundry & Mach. Co.*, 81 N.J. 150, 406 A.2d 140, 143–44 (1979);

*Sandford v. Chevrolet Div. of Gen. Motors,* 292 Or. 590, 642 P.2d 624, 628 (1982); *Fiske v. MacGregor, Div. of Brunswick,* 464 A.2d 719, 727 (R.I.1983); *Mulherin v. Ingersoll–Rand Co.,* 628 P.2d 1301, 1303–04 (Utah 1981); *Star Furniture Co. v. Pulaski Furniture Co.,* 171 W.Va. 79, 297 S.E.2d 854, 863 (1982); *Dippel v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55, 64–65 (1967). In addition to judicial determinations that comparative fault principles should apply to strict liability, the Uniform Comparative Fault Act ("Uniform Act") defines "fault" as "acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that *subject a person to strict tort liability."* Unif.Comparative Fault Act § 1(b), 12 U.L.A. 45 (West Supp.1993) (emphasis added). Several states have legislatively defined "fault," by adopting the Uniform Act's definition or a similarly broad definition, to include conduct that would render manufacturers liable under traditional strict liability doctrine. *See* Alaska Stat. § 09.17.900 (Supp.1992); Ark.Stat.Ann. § 16–64–122(c) (1987 & Supp.1991); Fla.Stat. Ann. § 768.81(4)(a) (West Supp.1993); Idaho Code § 6–801 (1990); Ill.Comp.Stat.Ann. ch. 735, act 5, § 2–1116 (Smith–Hurd Supp. 1992); Iowa Code Ann. § 668.1(1) (1987); Me.Rev.Stat.Ann. tit. 14, § 156 (West 1980); Minn.Stat.Ann. § 604.01(1a) (West Supp. 1993); N.H.Rev.Stat.Ann. § 507:7–d (Supp. 1992); N.Y.Civ.Prac.L. & R. 1411 (McKinney 1976); Utah Code Ann. § 78–27–37(2) (1992); Wash.Rev.Code Ann. § 4.22.015 (1988). As commentators have noted,

> [i]n the final analysis, most jurisdictions have decided that, regardless of semantics, it is fairer and more sensible to permit an allocation of a plaintiff's causal responsibility to reduce the liability of a products liability defendant. The policy objective of the strict liability doctrine for products is to compensate all those harmed by a defective and unreasonably dangerous product while using it in a reasonably foreseeable manner, but not to make the product supplier an insurer with respect to the product. The use of comparative fault as a defense is compatible with that policy. By transferring to consumers all the cost of the plaintiff's injury except that attribut-

able to his own fault, the application of comparative faults helps to ensure that self-responsibility remains an appropriate factor in the apportionment process.

Carol A. Mutter, *Moving to Comparative Negligence in an Era of Tort Reform: Decisions for Tennessee,* 57 Tenn.L.Rev. 199, 299–300 (1990) (footnotes omitted); *see* Edward S. Digges, Jr., & Robert D. Klein, *Comparative Fault in Maryland: The Time Has Come,* 41 Md.L.Rev. 276, 289–90 (1982); David A. Fischer, *Products Liability—Applicability of Comparative Negligence,* 43 Mo. L.Rev. 431, 450 (1978); Marcus L. Plant, *Comparative Negligence and Strict Tort Liability,* 40 La.L.Rev. 403, 415–16 (1980).

In *McIntyre,* the Tennessee Supreme Court recognized that its abandonment of contributory negligence necessitated reexamination and restructuring of other tort principles. *McIntyre,* 833 S.W.2d at 58. The court acknowledged this repercussion of its decision by abolishing joint and several liability. The *McIntyre* court noted that, "[h]aving thus adopted a rule more closely linking liability and fault, it would be inconsistent to simultaneously retain a rule . . . which may fortuitously impose a degree of liability that is out of all proportion to fault." *Id.* In reaching this conclusion, the court relied on the rule adopted by other comparative fault jurisdictions. *Id.* n. 7. This court predicts that, when confronted with issues of integrating comparative fault with other tort doctrines, the Tennessee Supreme Court would adhere to its analysis in *McIntyre* by examining the law of other comparative fault jurisdictions in establishing new doctrines imposing liability in proportion to the parties' relative fault.

Given the Tennessee Supreme Court's focus on "fault" as the basis for liability and its reliance on the practices followed in other jurisdictions, this court concludes that the Tennessee Supreme Court would follow the numerous other jurisdictions that have extended comparative fault to strict liability. Accordingly, the court rules that, in light of the recent changes wrought by the Tennessee Supreme Court, the defense of comparative fault could succeed against the claim asserted—strict products liability—by means

of reducing Defendant's liability by the proportion of fault attributable to Plaintiff or third parties. Therefore, the court DENIES Plaintiff's motion to strike Defendant's Fourth Defense.

■ Having concluded that comparative fault principles should be extended to strict liability cases, the court must now determine how the union of *McIntyre* and strict liability affects the defense of assumption of risk. Tennessee courts have traditionally recognized assumption of risk as a total bar to recovery in strict liability actions. *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516, 521–22 (Tenn.1973); *Hood v. Roadtec, Inc.*, 785 S.W.2d 359, 363–64 (Tenn.Ct.App.1989), *appeal denied* (Tenn.1990). In order to establish the assumption of risk defense, a manufacturer must prove that the plaintiff voluntarily and unreasonably encountered a known danger. *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516, 521 (Tenn.1973); *Hood*, 785 S.W.2d at 363–64. To carry this burden, a manufacturer must demonstrate that the plaintiff: "(1) discover[ed] the defect, (2) fully [understood] the danger it present[ed] to her, then (3) disregard[ed] this known danger and voluntarily expose[ed] herself to it." *Ellithorpe*, 503 S.W.2d at 522.

■ Plaintiff contends that, under comparative fault, assumption of risk no longer serves to preclude recovery in products liability actions, but merely reduces manufacturers' liability. (Mem.Supp.Pl.'s Mot.Strike at 2.) In support of her position that *McIntyre* removed assumption of risk as a total defense to products liability actions, Plaintiff relies upon *Perez v. McConkey*, No. 03A01–9209–CV–00331, 1993 WL 20147 (Tenn.Ct. App. Feb. 2, 1993), in which the Tennessee

Court of Appeals for the Eastern Section held,

first, express assumption of risk or consent, such as a contract between the parties, as qualified in *Olson v. Molzen*, 558 S.W.2d 429[, 432] (Tenn.1977), remains an absolute bar to recovery by a plaintiff; second, primary assumption of risk, as when a plaintiff voluntarily assumes known risks inherent in an activity, retains its viability under comparative negligence as a complete bar to recovery; but third, under comparative fault, secondary implied assumption of risk, which is nothing more than an aspect of contributory negligence, may serve to reduce a plaintiff's damages, but not necessarily—depending on the degree of the plaintiff's negligence—preclude recovery.

*Id.*, slip op. at 5.[4]

The *Perez* courts' analysis of assumption of risk reflects the treatment of the doctrine by the Uniform Comparative Fault Act. As noted in the Comment to the Uniform Act, "[a]ssumption of risk is a term with a number of different meanings—only one of which is "fault" within the meaning of this Act." Unif.Comparative Fault Act § 1(b) cmt., 12 U.L.A. 46 (West Supp.1993); *see* Carol A. Mutter, *Moving to Comparative Negligence in an Era of Tort Reform: Decisions for Tennessee*, 57 Tenn.L.Rev. 199, 286 (1990); Carol A. Mutter, *Rethinking Assumption of Risk After the Adoption of Comparative Fault*, 23 Mem.St.U.L.Rev. 85, 86–89 (1992). The Uniform Act identifies the following "meanings" of assumption of risk: (1) valid and enforceable consent, such as a contractual waiver of liability; (2) a lack of violation of a duty by the defendant, such as a landowner's failure to warn a licensee of a patent danger on the premises; (3) a plaintiff's reasonable assumption of risk;[5] and (4) a plain-

---

4. When a state supreme court has not addressed an issue, the law of that state is governed by the decision of the state intermediate appellate court unless and until the state supreme court or another panel of the state appellate court rules otherwise. *Wieczorek v. Volkswagenwerk, A.G.*, 731 F.2d 309, 311 (6th Cir.1984). However, the fact that the *Perez* decision has not been published diminishes its value as binding precedent. Regardless of whether the *Perez* decision governs the present case, this court need not determine the *Perez* opinion's binding effect because this

court concludes that the Tennessee Supreme Court would accept the *Perez* court's analysis.

5. Although the Uniform Act does not suggest an example of "reasonable" assumption of risk, such a case might arise when the plaintiff encounters a known danger in order to protect others from the harm. *See, e.g., Hood v. Roadtec, Inc.*, 785 S.W.2d 359, 364 (Tenn.Ct.App.1989) (holding that the plaintiff did not act unreasonably when he attempted to stop a self-propelled road paver that was rolling toward the two men

tiff's unreasonable assumption of risk, defined by the Uniform Act as "voluntary and with knowledge of the danger."[6] Unif.Comparative Fault Act § 1(b) cmt., 12 U.L.A. 46 (West Supp.1993). The Uniform Act's definition of "fault" includes only the last meaning of assumption of risk. Unif.Comparative Fault Act § 1(b), 12 U.L.A. 45 (West Supp. 1993) (" 'Fault' .... also includes ... unreasonable assumption of risk not constituting an enforceable consent.").

The first and second categories of assumption of risk are excluded by the Uniform Act because such circumstances—the plaintiff's consent or the defendant's lack of a duty—preclude any finding of liability of the defendant. The Uniform Act also excludes the third type of assumption of risk because a plaintiff's *reasonable* conduct cannot constitute "fault" of the plaintiff and should not affect recovery. *Id.* The fourth category, however, reflects the elements of the traditional assumption of risk defense, as defined by Tennessee courts, which requires a determination of the *reasonableness* of the plaintiff's conduct. *See, e.g., Ellithorpe v. Ford Motor Co.,* 503 S.W.2d 516, 521 (Tenn.1973); *Hood v. Roadtec, Inc.,* 785 S.W.2d 359, 363–64 (Tenn.Ct.App.1989), *appeal denied* (Tenn. 1990). The reasonableness inquiry logically requires a comparison between the plaintiff's actions and the degree of risk presented by the defect or dangerous condition. *See Hood,* 785 S.W.2d at 364 ("A general apprehension of danger is not sufficient."). Such an inquiry readily comports with a comparative fault system under which each party bears the responsibility for any portion of the injuries resulting from his "fault"—whether fault arises from a manufacturer's production of a defective or unreasonably dangerous product or from a plaintiff's unreasonable conduct in voluntarily exposing himself to the risk presented by the product.

This court concludes that, rather than rely on obsolete labels, the Tennessee Supreme Court would adopt the "assumption of risk"

structure embodied in the Uniform Act and employed by the Tennessee Court of Appeals in *Perez.* Under this standard, the extent to which a plaintiff's conduct affects his ability to recover against a manufacturer on the basis of strict liability is determined by focusing on the nature of the plaintiff's conduct. Whether a plaintiff's "assumption of the risk" would preclude or merely limit recovery depends on the specific conduct proven by the manufacturer. A plaintiff's conduct might still bar recovery in several situations, such as when the plaintiff assumes a risk by means of express contract, when the defendant has no duty to protect the plaintiff from a risk, or, under comparative fault, when the fault attributable to the plaintiff's conduct is equal to or greater than the fault attributable to the defendant. In other circumstances, the plaintiff's conduct might serve to merely reduce the plaintiff's recovery. Regardless of the effect of the plaintiff's conduct, this court predicts that assumption of risk will remain a valid defense in Tennessee, despite the supreme court's adoption of comparative fault. Accordingly, the court DENIES Plaintiff's motion to strike Defendant's Second Defense.

In summary, because Defendant's Fifth Defense provides sufficient notice of the nature of the defense—Defendant's compliance with applicable state and federal statutes and regulations—Plaintiff's motion to strike Defendant's Fifth Defense is DENIED. In addition, because the court concludes that the Tennessee Supreme Court would extend comparative fault principles to strict liability and would retain assumption of risk as a valid defense in products liability actions, Plaintiff's motion to strike Defendant's Fourth and Second Defenses is DENIED.

IT IS SO ORDERED.

---

working behind the paver), *appeal denied,* (Tenn. 1990).

**6.** The *Perez* court adopted these distinctions in defining the operation of the assumption of risk defense under a comparative fault system. *Perez,*

No. 03A01–9209–CV–00331, slip op. at 4–5 (quoting Carol A. Mutter, *Moving to Comparative Negligence in an Era of Tort Reform: Decisions for Tennessee,* 57 Tenn.L.Rev. 199, 285–86 (1990)).